821 So.2d 1015 (2001)
STATE of Alabama ex rel. Annie D. PROVITT
v.
Curtis COLEMAN.
2000456.
Court of Civil Appeals of Alabama.
December 14, 2001.
*1016 J. Coleman Campbell and Lois Brasfield, asst. attys. gen., Department of Human Resources, for appellant.
Patricia D. Warner, Montgomery, for appellee.
MURDOCK, Judge.
The State of Alabama, on the relation of Annie D. Provitt (hereinafter "the State"), appeals from a judgment of the Montgomery County Circuit Court, dismissing the State's appeal to that court of a child-support judgment that, among other things, had directed the Montgomery County office of the State Department of Human Resources ("DHR") to pay $4,804.10 plus a $1,500 attorney fee to Curtis Coleman, the father of Provitt's child. We reverse and remand.
Provitt receives public assistance from the State toward the support of her child, and the State brought an action against Coleman in November 1995 to have him declared to be the father of Provitt's child. Under Alabama law, a paternity action is to be filed "in the juvenile or family court division of the district or circuit court." Ala.Code 1975, § 26-17-10. The State's action was filed in the Circuit Court of Montgomery County and was docketed in the "Domestic Relations Division" of that court, which sits as the juvenile court in that county. See Steele v. McDaniel, 380 So.2d 892, 894 (Ala.Civ.App.1980). The case was assigned a "CS" case identifier, indicating that it involved a child-support matter. After blood testing determined Coleman to be the probable father, Coleman acknowledged paternity of Provitt's child, and in June 1996 the juvenile court confirmed the findings and recommendations of a referee of that court (see § 12-15-6, Ala.Code 1975) that Coleman be directed to pay $258 per month as prospective support for the child and that he pay DHR $6,466 in retroactive support.
In November 1999, the State filed a petition seeking a modification of the father's child-support obligation and an arrearage judgment. The State's petition was styled "In the Circuit Court of Montgomery County, Alabama," but used the same "CS" case identifier and case number as the original paternity action in juvenile court. The same juvenile-court referee who had made findings and recommendations in the 1996 case entered an order setting the State's petition for a hearing. After counsel appeared for Coleman, the hearing was continued to February 1, 2000, at which time the referee entered findings and recommended that Coleman's prospective monthly child-support obligation be increased to $306, and the juvenile court confirmed those findings and recommendations the next day.
The referee held a hearing on the arrearage claim on February 29, 2000, and on that date issued written "findings and recommendations." It found that Coleman owed the State $401.85 in interest on a previous arrearage but that he was otherwise current in making his support payments; the referee "continued" the matter until March 14, 2000, "for payment of [the] $ 401.85." The February 29, 2000, findings and recommendations prepared by the referee, like each of the documents prepared by the referee in the juvenile court, contains the provision that "[a]ny party not satisfied with this decision may request a rehearing by filing written notice with the Court within fourteen (14) days of the date of this order" (emphasis removed). This provision is consistent with Ala.Code 1975, § 12-15-6(d), which states *1017 that "[a] rehearing before the judge may be ordered by the judge at any time and shall be ordered if any party files a written request therefor within 14 days after receipt of the referee's written notice."
On March 3, 2000, the juvenile court confirmed as its "Order" the findings and recommendations that the referee had made on February 29, 2000. On March 14, 2000, 14 days after the referee's findings and recommendations were issued and 11 days after the juvenile court's judgment confirming those findings and recommendations, Coleman's counsel filed, on his behalf, what she entitled a "Motion to Transfer Case to Circuit Court and Motion to Interplead or Pay Funds into the Circuit Court." That motion did not purport to be a "notice of appeal" of the juvenile court's judgment, pursuant to Rule 28, Ala. R. Juv. P., but instead requested the "Child Support Division" to "transfer" the case to the Montgomery County Circuit Court "for review." Consistent with the view that Coleman's motion was a "written request" for a "rehearing" by the juvenile court pursuant to Ala.Code 1975, § 12-15-6(d), rather than a notice of appeal pursuant to Rule 28, the juvenile court entered an order on March 15, 2000 (which appears to have been drafted by Coleman's counsel and not by the juvenile court), "transferring" the case to the "Domestic Relations Division of the Circuit Court of Montgomery County, Alabama, for review." As we have stated, the "Domestic Relations Division" of the circuit court in Montgomery County is the juvenile court for that county.[1] Further, the juvenile court entered the following order on the very next day, March 16, 2000:
"THIS CAUSE comes before the Court upon the Order Granting [Coleman]'s Motion to Transfer Case to the Circuit Court of Montgomery County. Upon consideration thereof, it is hereby ... ORDERED ... [t]hat this cause is due to be and the same is hereby set for rehearing on the 19th day of April, 2000."
(Emphasis added.)
After a hearing at which testimony and other evidence was adduced, but at which no record was made, the juvenile court entered a judgment on June 12, 2000, determining that Coleman was not in arrears. The judgment of the juvenile court further declared that DHR had improperly intercepted certain income-tax-refunds payable to Coleman and that Coleman was entitled to have those funds paid to him, as well as an award of attorney fees. That judgment bore the same "CS" case identifier that had appeared in all previous filings in the case.
On June 26, 2000, 14 days after the juvenile court's judgment, the State filed a "Notice of Appeal," pursuant to Rule 28(B), Ala. R. Juv. P., requesting a stay of the juvenile court's judgment and a trial de novo in the circuit court's civil division; the State averred that an adequate record of proceedings in the juvenile court did not exist. The case was docketed in the circuit court's civil division with a "CV" case identifier. On August 18, 2000, Coleman moved to dismiss the appeal, averring that "a trial de novo ha[d] already taken place." On October 18, 2000, the circuit court dismissed the appeal. Nine days later, on October 27, 2000, the State moved to vacate the judgment of dismissal and to reinstate the case. That motion was denied on December 18, 2000.
The State contends that its appeal to the civil division of the circuit court from the June 12, 2000, judgment for a trial de novo *1018 was procedurally proper and was not due to be dismissed. Coleman contends that the dismissal of the State's appeal was proper because, he says, that appeal, Coleman says, sought what he calls an impermissible "second bite" at the "de novo apple," and that the State's appeal from the June 12, 2000, judgment should have been taken to this court, rather than to the circuit court.
We note that the initial proceedings in the juvenile court concerning Coleman's alleged arrearage (e.g., on February 29, 2000) were conducted before a referee and not before a juvenile-court judge. Under § 12-15-6(c), Ala.Code 1975, a juvenile-court referee is to transmit his or her findings and recommendations for disposition to the juvenile-court judge for confirmation. Under § 12-15-6(d), a rehearing before the judge shall be ordered if any party files a written request for one within 14 days after the receipt of the referee's written notice, and that hearing is to be de novo if the referee has not kept adequate records of the proceedings before him or her. Ala.Code 1975, § 12-15-6(e), provides that if a hearing before the judge is not requested or ordered (or the right thereto is waived), the referee's findings and recommendations shall become the judgment of the juvenile court "if confirmed by an order of the judge or as modified by the judge."
In Ex parte State ex rel. O.E.G., 770 So.2d 1087 (Ala.2000), after the referee had issued findings and recommendations that the juvenile-court judge had confirmed, the party aggrieved by the juvenile court's judgment timely filed what "clearly [was] a notice of appeal to the Circuit Court" for a trial de novo pursuant to Rule 28(B), Ala. R. Juv. P. 770 So.2d at 1089. Despite its loss of jurisdiction as a result of the appeal, the juvenile-court judge entered an order more than a month after the filing of that notice of appeal, stating that the notice of appeal would be treated as a motion for "reconsideration," that it would be granted as so treated, and that the case would be set for a later hearing. The Alabama Supreme Court concluded that the juvenile-court judge had erred in treating the notice of appeal as a motion for a rehearing, and explained that "[a]lthough § 12-15-6(d) states that `a rehearing before the judge may be ordered by the judge at any time,' implicit in that grant of authority is the legal concept that the judge must still have jurisdiction over the case to be able to order a rehearing." 770 So.2d at 1090. In so holding, however, the Alabama Supreme Court acknowledged that the party that had filed the notice of appeal could have filed a motion for a rehearing pursuant to § 12-15-6(d), but simply did not do so. Id.
In this case, Coleman's counsel filed a document that is not a notice of appeal to a higher court, but is simply a "motion to transfer." The juvenile-court judge's orders indicate that it treated that filing as a written request for a de novo rehearing under § 12-15-6(d) and granted it. Moreover, the juvenile-court "CS" case identifier did not change after Coleman's motion was granted, and no party objected to the juvenile-court judge's conducting a de novo rehearing and entering a new judgment. We therefore construe Coleman's filing not as a notice of appeal to the circuit court, but a written request for rehearing before the circuit judge presiding in the juvenile court.
The special concurrence posits that the judge who conducted the hearing after the referee's findings and recommendations were confirmed on March 3, 2000, and who entered the June 12, 2000, judgment, acted as a circuit-court judge and not as a juvenile-court judge (and proposes that the case be remanded for that judge to establish *1019 that state of events).[2] That position ignores the fact that that judge, in each of his orders and in his judgment, continued to utilize the "CS" number (which indicates a juvenile-court child-support mattercf. McBride v. Gentry, 686 So.2d 313 (Ala.Civ. App.1996), and S.C.G. v. J.G.Y., 794 So.2d 399 (Ala.Civ.App.2000)) that had been assigned to the juvenile-court case in 1995. In addition, there is no evidence in the record that Provitt paid a docketing fee at the time he filed his "Motion to Transfer," as is required to perfect a de novo appeal to the circuit court. See Opinion of the Clerk, 708 So.2d 568 (1997). Finally, the position of the concurrence overlooks the fact that the judge who presided over the case after the referee's findings and recommendations had been confirmed entered an order on March 16, 2000, expressly setting the case for rehearing. There is no ambiguity in these indications that would necessitate a limited remand; while the peculiar allocation of judicial duties in Montgomery County may give the judge who entered the June 12, 2000, judgment in this case the power, in certain cases, to act in a capacity as a circuit-court judge who could have heard a de novo appeal, we conclude that he did not so act in this case.
Because neither the proceedings before the juvenile-court referee nor those before the juvenile-court judge were transcribed and certified as adequate for appellate review, there did not exist an adequate record at the time that the State filed its notice of appeal from the juvenile-court's June 12, 2000, judgment, such that this court would have had jurisdiction over the appeal. See Rule 28(A), Ala. R. Juv. P. The circuit court's civil division, therefore, was the proper court to hear the State's appeal from the juvenile-court's June 12, 2000, judgment. Furthermore, that review, pursuant to Rule 28(B), Ala. R. Juv. P., is de novo. It follows, then, that the juvenile court's merely conducting a de novo rehearing, as it was required to do under § 12-15-6(d) upon a party's request, does not warrant the circuit court's dismissal of the State's appeal. Therefore, we reverse the circuit court's judgment of dismissal and remand for a trial de novo on the State's arrearage claim, on Coleman's refund-diversion claim, and on the juvenile court's attorney-fee award.[3] Coleman's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED.
CRAWLEY and PITTMAN, JJ., concur.
THOMPSON, J., concurs in the result.
YATES, P.J., concurs in part and dissents in part.
YATES, Presiding Judge, concurring in part and dissenting in part.
The record indicates the following procedural history: On November 1, 1995, the *1020 State of Alabama, on behalf of Annie D. Provitt, filed a complaint seeking a determination of paternity and child support in the Circuit Court of Montgomery County, child support division ("Circuit Court CSD") (CS-95-986). In January 1996, an order determining Coleman to be the father and ordering him to pay child support was entered by Referee Paul Heibel and confirmed by Circuit Court Judge John Davis in the Circuit Court CSD. The State sought a modification of child support on November 16, 1999, in the Circuit Court CSD (CS-95-986). After conducting an ore tenus proceeding, Referee Heibel entered an order modifying support on February 1, 2000; that order reserved the issue of arrearage and interest and was confirmed by Judge Richard Dorrough on February 2, 2000. On February 29, 2000, a revised order was entered against Coleman; Judge Dorrough confirmed that order on March 3, 2000.
On March 14, 2000, Coleman filed a document in the Circuit Court CSD titled "Motion to Transfer Case to Circuit Court and Motion to Interplead or Pay Funds into the Circuit Court." He requested in part, that the "Circuit Court of Montgomery County, Domestic Relations division,... allow him to pay into the Court the sum of...." On March 15, 2000, Judge John Capell granted the transfer to the Circuit Court, Domestic Relations Division ("Circuit Court DRD").
After conducting an ore tenus proceeding, Judge Capell as the circuit judge, Circuit Court DRD, entered a detailed five-page order on June 12, 2000, stating, in part:
"This matter came before the Court from the Child Support Division upon the Petition for Review filed by [Coleman]. [Coleman] requested this Court to review the determination made by the Montgomery County Department of Human Resources that he owed $401.83 in unpaid interest payments on previously assessed arrearage. At the date and time of the hearing, [Coleman] appeared and was represented by ... [Provitt] and [DHR] were represented by ... Also present was the DHR social worker representative.
"After hearing the testimony and reviewing the evidence presented by [Coleman] and DHR, the Court finds that there is no arrearage in existence and further, that no interest is owed by [Coleman]."
On June 26, 2000, the State filed a notice of appeal, indicating that the appeal was from the child support division to the Circuit Court of Montgomery County. On August 18, 2000, Coleman moved to dismiss "the appeal for trial de novo filed by the Child Support Division of the Montgomery County District Attorney's Office." Coleman argued in part,
"1. This above-styled matter was initially filed by [Provitt] in the Child Support Division of the Montgomery County District Attorney's Office.
"2. Coleman subsequently timely filed an appeal for a trial de novo to the Circuit Court of Montgomery County to challenge the DA's position that he was in arrears in child support payments....
"3. On April 19, 2000, Honorable John Capell, Circuit Judge of the 15th Judicial District, heard the evidence and entered four (4) exhibits filed by [Coleman] in support of his position that no monies were owed.
"6. On or about June 26, 2000, the DA's Office filed an appeal citing Rule 28(E) of the Alabama Rules of Juvenile Procedure. This rule allows an appeal to the Circuit Court for trial de novo. This rule does not allow for an appeal from the Circuit Court to a different *1021 circuit judge in the same Circuit Court for trial de novo. This is not allowed under any construction of the various rule of procedure....
"7. Furthermore, there is no procedure or authority by which a circuit judge in one division of a circuit, i.e., Civil Division of the 15th Judicial Circuit, is allowed to review the Order from a peer circuit judge in the same judicial circuit, i.e., Family Court Division of the 15th Judicial Circuit. If such a review de novo were allowed, Family Court judges in Montgomery County could be requested to preside over de novo trials from the civil and criminal divisions of the Montgomery County Circuit Courts.
"8. Because an Order has been issued pursuant to a circuit court trial de novo, the appeal should have been properly filed and an appeal from the Montgomery County Circuit Court to the Alabama Court of Civil Appeals."
On October 18, 2000, Judge Shashy, circuit court judge, dismissed the case, noting, "No one appeared from the DA's Office." On October 27, 2000, the State moved to vacate the judgment of dismissal and to reinstate the case. They argued in part, that Judge Capell had held a rehearing rather than a trial de novo and that they were appropriately appealing to a circuit court, pursuant to Rule 28(E), Ala. R. Juv. P. Judge Shashy denied the motion on December 18, 2000.
This court has consistently held that "[i]n determining the nature of a motion, we look at its substance and not at its title." Ex parte Johnson 707 So.2d 251, 253 (Ala.Civ.App.1997). It appears from the record that Judge Capell was acting in his capacity as circuit court judge for the domestic relations division, which is separate from the child support division within the juvenile court. I disagree with the main opinion's characterization that "merely because the juvenile court conducted a de novo rehearing" the circuit court was the proper court to hear the State's appeal. Accordingly, I would remand the case to the circuit court that denied the appeal, with instructions that the case be sent to Judge Capell to determine whether a trial de novo was held pursuant to Rule 28(B) Ala. R. Juv. P., and whether there is an adequate record for appeal.
NOTES
[1] We also note that a court cannot consider an appeal from its own judgment. See In re: State ex rel. S.L. v. S.W., 700 So.2d 1369, 1371 (Ala.1997).
[2] Both the judge who confirmed the February 29, 2000, findings and recommendations of the juvenile-court referee and the judge who entered the June 12, 2000, judgment are circuit judges of the Montgomery County "Domestic Relations Division"; thus, both judges hear juvenile-court matters (e.g., paternity cases) and circuit-court domestic matters (e.g., divorce cases). Both judges, therefore, possess exactly the same authority under § 12-15-6, Ala.Code 1975, to confirm referee findings and recommendations and rehear cases.
[3] In so reversing and remanding, we do not dictate to the Montgomery County Circuit Court which circuit judge in which of its divisions should hear DHR's appeal other than to note that the judge assigned to hear the de novo appeal should not be one of the same judges who has been involved with the case at the juvenile-court level. See note 1, supra.