17 So.3d 683 (2009)
M.R.J.
v.
D.R.B.
2070487.
Court of Civil Appeals of Alabama.
February 27, 2009.
*684 Thomas H. Claunch III of Harding & Claunch, LLC, Montgomery, for appellant.
Submitted on appellant's brief only.
PER CURIAM.
M.R.J. ("the mother") appeals from a judgment entered by the Montgomery Juvenile Court awarding custody of Z.R.J. ("the child") to D.R.B. ("the father"). We reverse.

Procedural History
The record reveals that the child was born in September 2003. Until the instant proceedings, the mother had maintained physical custody of the child since the child's birth. The father testified that he had voluntarily paid some child support to the mother but that, at some point before December 2006, the mother had sought a formal adjudication regarding child support in the Montgomery Juvenile Court.[1] In that proceeding, the juvenile court established *685 the paternity of the child and ordered the father to pay the mother specified monthly child support.
While the child-support proceeding was still pending, the father filed a complaint in the juvenile court on December 11, 2006, requesting that the juvenile court find the child dependent; award the father custody of the child, subject to the mother's right to visitation; and require the mother to pay child support. On March 29, 2007, the mother filed her own complaint alleging the dependency of the child and requesting that the juvenile court award her legal custody of the child.
On December 12, 2007, the juvenile court conducted an ore tenus proceeding to hear the competing complaints seeking custody of the child. On January 25, 2008, the juvenile court entered a judgment that made no determination as to dependency but stated, in pertinent part:
"Based on the foregoing, the Court finds and it is hereby ORDERED as follows:
"1. That it is in the best interest of the minor child that the parties be and are hereby vested with joint legal custody of the minor child, with physical custody vested in [the father.]
"2. That [the mother] is awarded liberal visitation, which shall be established by the Guardian ad Litem and submitted to the Court in writing for inclusion in this file."
The mother filed a timely notice of appeal and requested that the juvenile court appoint her an attorney on appeal.
The mother's appointed appellate counsel filed a "no-merit" brief, pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); however, that brief did not address whether the juvenile court had jurisdiction to adjudicate the custody issue in this case. This court instructed the parties to file letter briefs regarding whether the juvenile court had subject-matter jurisdiction to award custody of the child to the father without a finding of dependency. The failure of the juvenile court to expressly or implicitly find the child dependent indicates that the juvenile court was not exercising its dependency jurisdiction when it determined the custody of the child. See M.B. v. R.P., 3 So.3d 237 (Ala.Civ.App. 2008). Nevertheless, we conclude that the juvenile court had jurisdiction to determine the custody of the child outside the context of a dependency proceeding because the juvenile court had obtained jurisdiction over the child in the earlier child-support action in which the paternity of the child had been adjudicated, and the juvenile court retains that jurisdiction until the child reaches the age of 21, § 12-15-32, Ala.Code 1975. See also W.B.G.M. v. P.S.T., 999 So.2d 971, 973 (Ala.Civ.App. 2008).

Issues
Although the mother's appointed counsel indicated that the mother's appeal lacked merit, this court, pursuant to Anders, supra, has conducted its own review of the record and has identified at least two issues that would arguably warrant reversal: (1) whether the juvenile court applied the wrong standard in making its custody determination and (2) whether the juvenile court erred in granting the guardian ad litem the authority to determine the visitation the mother would receive.

Discussion
In T.B. v. C.D.L., 910 So.2d 794 (Ala.Civ. App.2005), this court held that a child-support order constituted a custody award in favor of the recipient parent. In that case, this court stated:

*686 "[T]he juvenile court's conclusion that the mother did not have custody is erroneous. In 1997, the mother, with the aid of the district attorney's office, sought and received child support from the father. Based upon the award of child support to the mother, we conclude that the mother was also awarded custody of the child at the time the original paternity and child-support judgment was entered and that the award of custody to the mother was reaffirmed by the subsequent modification judgments."
910 So.2d at 795-96 (emphasis added).
In this case, it is undisputed that the juvenile court had previously established the paternity of the child and had ordered the father to pay child support. Under T.B., that adjudication established the mother as the custodial parent. Thus, in order to obtain a modification of custody, the father had to satisfy the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). T.B., 910 So.2d at 796 (because a prior child-support order had been entered, father seeking modification of custody was required to meet standard set forth in McLendon).
The terms of the final judgment indicate that the juvenile court employed the best-interests-of-the-child standard, which applies to initial-custody determinations and the dispositional phase of dependency proceedings. See B.S.L. v. S.E., 826 So.2d 890 (Ala.Civ.App.2002). This court has repeatedly held that a lower court commits reversible error by analyzing a case under the best-interests-of-the-child standard in custody-modification cases in which the McLendon standard applies. See, e.g., S.G. v. P.C., 853 So.2d 246 (Ala. Civ.App.2002); and S.D.F. v. A.K., 875 So.2d 326 (Ala.Civ.App.2003). See also Rehfeld v. Roth, 885 So.2d 791, 794-95 (Ala.Civ.App.2004) (summarizing principles governing when application of erroneous standard to custody matter is and is not reversible error). We therefore must reverse the juvenile court's judgment and remand this case for the juvenile court to analyze the evidence under the correct standard. See Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994).[2]
Because on remand the juvenile court may determine that the father did not satisfy the McLendon standard, and may leave custody with the mother, we pretermit any discussion of the visitation issue.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
BRYAN, J., concurs specially.
PITTMAN, J., concurs in the result, without writing.
BRYAN, Judge, concurring specially.
I concur fully in the main opinion. I write specially to emphasize that the McLendon standard
"`is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody *687 should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.'"
Ex parte McLendon, 455 So.2d 863, 865-66 (Ala.1984) (quoting Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App.1976)). Additionally, our supreme court has previously stated that "[t]he burden imposed by the McLendon standard is typically a heavy one" and that it is "meant to minimize disruptive changes of custody because this Court presumes that stability is inherently more beneficial to a child than disruption." Ex parte Cleghorn, 993 So.2d 462, 468 (Ala.2008) (citing Ex parte McLendon, 455 So.2d at 865). Furthermore, Alabama law clearly expresses the requirement that our juvenile courtswhile acting within the framework of the McLendon standard in custody-modification proceedingsmust exercise the "`duty to scrupulously guard and protect'" a child's need for permanence and the emotional well-being that naturally results therefrom. Ex parte Cleghorn, 993 So.2d at 468 (quoting Ex parte Fann, 810 So.2d 631, 638 (Ala.2001)).
NOTES
[1] The domestic-relations division of the Montgomery Circuit Court sits as the juvenile court in that county. See Act No. 810, Ala. Acts 1959, as amended; see also State ex rel. Provitt v. Coleman, 821 So.2d 1015 (Ala.Civ.App. 2001), and Steele v. McDaniel, 380 So.2d 892, 894 (Ala.Civ.App. 1980).
[2] Unlike in S.P. v. V.T., 988 So.2d 572 (Ala. Civ.App.2008), we anticipate that the same judge who rendered the final judgment will preside over the case on remand. Hence, we instruct that judge simply to apply the correct custody-modification standard to the existing evidence and not to conduct any further evidentiary hearing.