PER CURIAM.
D.W. (“the uncle”) had custody of B.B. (“the child”) since the child was approximately one and a half years old until May 2005. The child is currently 14 years old. The child has had little contact with her natural parents because of their substance-abuse problems.
*961 The uncle accused the child of stealing from him, his wife, and his wife’s son. As a result, on May 17, 2005, the child was placed on probation and ordered to perform community service. Immediately following the hearing on the criminal charges, D.W. relinquished custody of the child. On May 18, 2005, the juvenile court entered an order finding the child to be dependent, awarding custody of the child to the Department of Human Resources (“DHR”), and placing the child in a group home.
On June 8, 2005, DHR conducted a meeting and formulated an Individualized Service Plan (“ISP”) for the child. The uncle participated in the ISP meeting. The ISP goals for the child’s “family members” included “openly communicating” with each other and visiting with the child in order for the family members to rebuild and improve their relationships with the child. DHR’s goal was, and has continued to be, that the child be “returned home.”
The juvenile court entered several orders during its continued review of this matter. Pursuant to those court orders, the uncle was awarded visitation rights with the child. A report prepared by a worker at the group home for a June 20, 2005, review hearing before the juvenile court indicates that the uncle was “very unhappy with [the child] and her behavior. He wants to see changes and improvements before she can come home with him.”
The child has remained in the group home since May 2005. During the time that the child has remained in the group home, the uncle has maintained only minimal contact with her, primarily by telephone. The uncle and his wife have refused to cooperate in DHR-recommended and court-ordered family therapy.
On July 29, 2005, in response to a motion filed by the uncle, the juvenile court removed from a June 2005 court order a requirement that the uncle submit to a psychological evaluation. However, subsequent to the entry of the July 29, 2005, order, the child’s psychologist advised the court, among other things, that the uncle and his wife should submit to a psychological evaluation and that they should follow the recommendations that result from that evaluation. The juvenile court, based upon the recommendation of the child’s psychologist, entered a dispositional order on October 4, 2005, that provided, in pertinent part, that the uncle submit to a psychological evaluation. In its October 4, 2005, dispositional order, the juvenile court also made a finding of dependency, ordered that custody of the child remain with DHR, and awarded visitation rights to the uncle and to the child’s mother. The uncle filed a postjudgment motion. We note that in his postjudgment motion the uncle maintained that he had relinquished custody of the child and that he “is not seeking to regain custody.” The uncle’s post-judgment motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P.; and Rule 1(B), Ala. R. Juv. P. The uncle timely appealed.
The uncle argues that the juvenile court erred in requiring him to submit to a psychological evaluation. He asserts that the doctrine of res judicata prevented the juvenile court from entering its October 4, 2005, order requiring him to submit to a psychological evaluation. The uncle argues that the July 29, 2005, order that removed the requirement that he submit to a psychological evaluation was a final judgment that resolved the issue whether he should have to be psychologically evaluated during the pendency of this matter.
In support of this argument, the uncle cites only one authority that sets forth generally the elements of the doctrine of *962 res judicata. See Robinson v. Holley, 549 So.2d 1 (Ala.1989). In that case, our supreme court stated that the doctrine of res judicata bars a subsequent legal action when “(1) the question or fact ... ha[s] been litigated and determined by a court of competent jurisdiction; (2) the final judgment [was] rendered on the merits; (3) the parties to both suits [are] substantially identical; and (4) the same cause of action ... ha[s] been presented in both suits.” Robinson v. Holley, 549 So.2d at 2. The uncle makes no argument applying the above-listed factors to the facts of this case. Specifically, the uncle fails to argue whether the issue of whether he should undergo a psychological evaluation was “litigated and determined” by the July 29, 2005, order or whether the July 29, 2005, order was a “final judgment ... rendered on the merits” that would have preclusive effect. Id. It is not the function of this court to create such an argument on behalf of the uncle or to perform research in order to properly support such an argument. BankAmerica Housing Servs., a Div. of Bank of America, FSB v. Lee, 833 So.2d 609, 620-21 (Ala.2002); see also Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992) (“[W]e cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.”).
Out of an abundance of caution, we note:
“Unlike many other types of cases, dependency proceedings often involve a series of appealable dispositional custody orders. Eventually the trial court enters an order in a dependency proceeding that is intended to be its ‘final’ dispositional order as to the pending case, i.e., a custodial placement that is intended to be permanent, to the extent custody awards can be permanent. See Ex parte J.P., 641 So.2d [276,] 278 [ (Ala.1994) ] (‘by its very nature, custody is always temporary and never permanent’ because it is always subject to change based upon an appropriate petition and evidence). Under ideal circumstances, such final dispositional orders coincide with the end of the child’s dependency, i.e., the child has a proper custodian ‘and ’ is no longer ‘in need of care or supervision’ by persons other than the custodian. See Ala.Code 1975, § 12-15-1 (10)n. In other words, under ideal circumstances, the final dispositional order results in a custody award wherein the parent or custodian is able and willing to have the care, custody, and control of the child, free from any intervention or supervision by the state under the dependency statutes.
“Notwithstanding the foregoing, regardless of whether a dispositional order is the ‘final’ dispositional order in a particular case (meaning that it will not be changed absent the filing of an appropriate pleading, proof of a material change in circumstances, and meeting the applicable legal standard), our legislature has indicated that the appropriate standard to be applied in an ongoing dependency proceeding is the best-interest standard. See Ala.Code 1975, § 12-15-71(a).”
S.P. v. E.T., [Ms. 2040044, Dec. 30, 2005] — So.2d -, - (Ala.Civ.App.2005). Nothing in the record indicates that the dispositional orders entered in this matter were “final” dispositional orders so as to trigger the application of the doctrine of res judicata. The uncle has failed to demonstrate error with regard to this argument.
The uncle cites § 12-15-69, Ala. Code 1975, in support of his argument that the juvenile court erred in requiring him to submit to a psychological evaluation. That section provides, in pertinent part:
“(b) Where there are indications that the child may be physically ill, mentally *963 ill or mentally retarded, the court, on its own motion or motion by the prosecutor or that of counsel for the child, may order the child to be examined at a suitable place by a physician, psychiatrist, psychologist or other qualified examiner, under the supervision of a physician, psychiatrist or psychologist who shall certify such examiner’s findings in writing, or an examiner approved by the Department of Mental Health prior to a hearing on the merits of the petition.
[[Image here]]
“(d) The court, after hearing, may order an examination as described in subsection (b) of this section of a parent or custodian who gives his consent and whose ability to care for or supervise a child before the court is in issue.”
Much of the record supports a conclusion that DHR and the juvenile court believe that the uncle is seeking to be reunited with the child. The uncle has asserted, however, both before the juvenile court in his postjudgment motion and before this court in his appellate brief,[1] that he “is not seeking” custody of the child. It is not clear to this court whether or not the uncle intends to be reunited with the child at some point in the future. Therefore, we reverse the juvenile court’s judgment insofar as it requires the uncle to undergo a psychological evaluation, and we remand this case for the juvenile court to determine whether or not the uncle is seeking custody of the child or intends to seek custody of the child in the future. If the juvenile court determines that the uncle is seeking custody, it has the authority to determine whether the uncle’s ability to care for the child will be at issue. See J.M. v. State Dep’t of Human Res., 686 So.2d 1253, 1255 (Ala.Civ.App.1996) (affirming the trial court’s order requiring the mother to submit to a psychological evaluation over her objection because her “psychological well-being was directly related to her ability to care for the children”). If the uncle’s ability to care for the child is or will be at issue, given the particular facts of this case, we can find no abuse of discretion on the part of the juvenile court in requiring the uncle to submit to a psychological evaluation. See J.M. v. State Dep’t of Human Res., supra; see also § 12-15-71(a)(4), Ala. Code 1975 (providing that the trial court may “[m]ake any other order as the court in its discretion shall deem to be for the welfare and best interests of the child”).
REVERSED AND REMANDED WITH INSTRUCTIONS.
*964 THOMPSON, PITTMAN, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the judgment of reversal only, without writing.
CRAWLEY, P.J., dissents from the rationale and concurs in the judgment of reversal, with writing.

. In his special writing, Presiding Judge Crawley has accused the majority of this court of "ignoring” the uncle's argument that he cannot be required to submit to a psychological examination; the uncle bases that argument on his assertion that because he relinquished custody of the child he is not a “custodian" under § 12-15-69, Ala.Code 1975. Like the uncle, the special writing merely asserts that the uncle is not the custodian of the child. Neither the uncle nor the special writing cites any authority in support of that assertion, neither defines the term “custodian,” and neither develops any argument with regard to the use of the term “custodian” under Chapter 15 of Title 12, Ala. Code 1975. It is not the function of this court to create arguments for an appellant or to perform the legal research and analysis necessary to support those arguments. Rowe v. Dunn, [Ms. 2040447, March 3, 2006] - So.2d -, - (Ala.Civ.App.2006) (citing Henderson v. Alabama A & M Univ., 483 So.2d 392, 392 (Ala.1986), and Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984)). “[W]e decline to do the [uncle’s] research and to properly develop an argument on this issue.” M.E.T. v. M.F., 892 So.2d 393, 394 (Ala.Civ.App.2003).