Haylee Bright Marusich ("the mother") and Charles D. Bright ("the father") were divorced by a March 6, 2002, judgment of the trial court. One child was born of the parties' marriage. Pursuant to the divorce judgment, the mother was awarded primary physical custody of the child and the father was awarded visitation. The father was ordered to pay $292.93 in monthly child support.
On September 21, 2004, the father filed a petition to modify custody of the child. The mother answered and counterclaimed, seeking to modify the father's child-support obligation and also seeking to have the father held in contempt for his alleged failure to pay child support. On April 19, 2005, the trial court held a hearing and received ore tenus evidence. On June 3, 2005, the trial court entered a judgment granting the father's petition to modify and denying the mother's counterclaims. In its judgment, the trial court awarded the father and the mother joint physical and legal custody of the child in alternating, two-week intervals. The trial court specifically found that there had been a material change in circumstances that affected the welfare of the child and that a modification of custody would materially promote the best interests and welfare of the child. The mother subsequently filed a postjudgment motion that was denied by operation of law. See Rule 59. 1, Ala. R. Civ. P. The mother timely appealed. On March 21, 2006, this court ordered the parties to mediate their dispute. However, the parties have failed to resolve this matter through mediation.[1]
The evidence presented at trial revealed the following facts. At the time of trial, the child was six years old. The child was in the first grade at Pinedale Elementary School and is a straight-A student. The child participates in extracurricular activities that include football, basketball, and baseball. The record indicates that both the father and the mother support the child's participation in those activities.
The father has one child from a prior marriage; he does not have custody of that child. At the time of trial, the father had remarried. The father's wife has one child, a six-year-old son, from a prior marriage; the father's wife has custody of that child. According to the father, the child and his wife's child have a good relationship. The father and his wife live in a two-bedroom home. The father testified that he works approximately 40 hours a week and earns $14.94 per hour.
The father testified that after he and the mother divorced the mother agreed to give him one extra day of visitation during the week. The father, with the mother's permission, *Page 1070 
exercised visitation with the child Wednesday evenings, in addition to his court-awarded visitation every other weekend and two weeks during the child's summer vacation. The father explained that he wanted to play an integral role in the child's life and, therefore, that he wanted to have custody of the child for "half the time."
The mother and the father live within approximately one-half mile of each other. The father testified that, if the child lived with him, the child would attend the same school that the child had attended while in the mother's custody. According to the father, the child's day-to-day activities and routine would not change. The father testified that the child would continue to participate in the same extracurricular activities.
The mother is employed as a waitress. The mother testified that she works approximately 17 hours a week and earns $5.15 per hour. The mother testified that her work schedule requires her to work the lunch shift on Wednesdays and the dinner shift on Fridays and Saturdays. The mother testified that she also attends school, part-time, at Enterprise Ozark Community College; the mother expected to receive her associate's degree within one month of the hearing. The mother lives in an apartment that she shares with the child and her 17-year-old daughter from a prior marriage. According to the mother, her daughter cares for the child when the mother works on Friday and Saturday evenings. In addition to her employment income, the mother receives $400 a month in child support for the benefit of her daughter and $293 from the father in child support for the child. The mother estimated she had $764 in monthly expenses.
The mother testified that she believed that the child should spend time with both the father and her. The mother testified that the father was a good father and that the father and the child had a good relationship. According to the mother, the child told her that he wanted to live with the father because the child did not want to make the father cry.
The child testified that he wanted to live with the father and visit the mother. The child explained that he wanted to live with the father because he did not spend much time with the father. Testimony from the child indicated that the mother and the father equally cared for the child's needs. The child testified that he ate well at both parties' houses and that both parties supported his participation in extracurricular activities.
The mother argues on appeal that the father failed to meet the burden set forth in Ex parte McLendon,455 So.2d 863 (Ala. 1984), necessary to justify a change in custody, and, thus, she argues that the trial court erred in awarding the father and the mother joint physical custody of the child.
 "When this Court reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume the trial court's decision is correct: `"A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong. . . ."' Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App. 1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody *Page 1071 
cases. `In child custody cases especially, the perception of an attentive trial judge is of great importance.' Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App. 1981). In regard to custody determinations, this Court has also stated: `It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.' Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996)."
Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001).
In its judgment, the trial court found that the father had met the standard for the modification of custody set forth in Exparte McLendon, supra. Under that standard, the parent seeking to modify custody of a child must demonstrate that there has been a material change in circumstances, that the proposed change in custody will materially promote the child's best interests, and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra. A parent seeking to modify a previous custody order bears a heavy burden of proof.Vick v. Vick, 688 So.2d 852 (Ala.Civ.App. 1997).
In C.E. v. C.C.H., 922 So.2d 934 (Ala.Civ.App. 2005), this court reversed the judgment of the trial court transferring custody of the child from the father to the mother. The mother contended that custody should be changed based on the child's mental-health needs and the child's desire to live with her instead of the father. The trial court granted the mother's request for a modification of custody and based its decision to change custody in large part on the child's wish to live with the mother. C.E., 922 So.2d at 937. In reversing the decision of the trial court, this court recognized that the child's wishes were only one of a myriad of factors to consider when making a custody decision but noted that the child's wishes are not determinative of the issue. 922 So.2d at 937. The court noted that the mother failed to present evidence to establish that placing the child in the mother's custody would materially promote the child's best interests.
In the instant case, the father offered insufficient evidence to establish that there had been a material change in circumstances warranting a change in custody. The evidence presented by the father demonstrating a change in circumstances following the parties' March 2002 divorce consisted of his remarriage and the child's desire to live with the father. Other than the child benefiting from spending more time with the father, the father presented no other evidence regarding how a change in custody would benefit the child or materially promote the child's best interests. Although it is clear that a change in custody from the mother to the father would not act to uproot the child from his daily activities or his schedule of school activities, that is but one element to consider when deciding whether to transfer custody pursuant to McLendon. The child testified that he wanted to live with the father; however, that testimony alone was insufficient to overcome the presumption in favor of the mother. See Glover v.Singleton, 598 So.2d 995, 996 (Ala.Civ.App. 1992) (holding that when the child simply expresses a preference for one parent in a modification proceeding requiring the application of Exparte McLendon, such a preference, without more, is insufficient to justify a change in custody).
On the other hand, the father is to be commended on his pursuit of a stronger relationship with the child and his desire to spend more time with the child. Children *Page 1072 
benefit from maintaining strong relationships with both parents, and the parents are encouraged to continue to work together for the best interests of the child.
The record before us indicates that the mother is willing to allow the father visitation with the child beyond the visitation ordered by the trial court. Before the custody-modification proceeding, the mother permitted the father to visit the child on Wednesday evenings. The mother testified at trial that she had no objection to the father having the child for half of the child's summer vacation from school and that she had no objection to the father's having the child for half of the school holidays during the child's school year. The facts of this case reveal that increased visitation with the father can only benefit the child.
Although this court finds the father's desire to be more involved in the child's life to be commendable, we conclude that there was not sufficient evidence demonstrating a material change in circumstances since the entry of the trial court's March 2002 divorce judgment that would justify a change in custody from the mother to the father. Therefore, we are left with no alternative but to reverse the judgment of the trial court.
The mother's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED.
CRAWLEY, P.J., concurs.
PITTMAN, J., concurs specially, with writing.
BRYAN, J., concurs in the result, without writing.
MURDOCK, J., dissents, with writing.
[1] At the time this court referred the case for appellate mediation, the case had been submitted for decision on appeal for 15 days.