I respectfully dissent. Although it is a close call, given the deference that is owed by this court to the trial court when evidence has been received ore tenus, I would defer to the trial court's determination that a material change of circumstances has occurred in this case.[2] *Page 1073 
Even if I were to agree that the record did not support the trial court's determination that there had been a material change of circumstances, I would still feel compelled to write separately to address several statements in the main opinion and in Judge Pittman's separate writing. First, the main opinion indicates that our Supreme Court's decision in Ex parteMcLendon, 455 So.2d 863 (Ala. 1984), requires a party seeking a change of custody to prove that "the proposed change in custody will materially promote the child's best interest,and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child." 947 So.2d at 1071 (emphasis added). As I have written on other occasions, I disagree with the suggestion that these are two separate tests. See, e.g., Gonzalez v. Parker,893 So.2d 1228, 1234-36 (Ala.Civ.App. 2004) (Murdock, J., dissenting). Instead, a plain reading of our Supreme Court's opinion in McLendon appears to make it clear that the latter phrase is an explanation of what is required to satisfy the material-promotion standard in the first phrase. SeeParker, supra.
By the same token, I cannot agree with the suggestion in the main opinion that a parent seeking to modify a prior custody order always bears a heavy burden of proof. It is true that such a parent will always have the burden of proving a material change of circumstances, without which the prior custody order will have res judicata effect. See, e.g., Selfv. Fugard, 518 So.2d 727 (Ala.Civ.App. 1987) (explaining that a child-custody determination is final with respect to the particular set of circumstances currently before the court but is subject to modification upon a showing of a subsequent material change of circumstances); and Spears v.Wheeler, 877 So.2d 607, 609 n. 1 (Ala.Civ.App. 2003) (Murdock, J., dissenting); cf. In re B.B.,944 So.2d 960, 962 (Ala.Civ.App. 2006) (quoting S.P. v. E.T., [Ms. 2040044, Dec. 30, 2005] ___ So.2d ____, ____ (Ala.Civ.App. 2005), in the context of a dependency proceeding). See generally Exparte J.P., 641 So.2d 276 (Ala. 1994). Once a material change of circumstances has been proven, however, the extent to which a child's interests must be promoted by a proposed change of custody (and thus the weight of the petitioning parent's ultimate burden) will depend on the degree of disruption that must be overcome before the court can conclude that the change will be in the child's best interests. See Smith v.Smith, 865 So.2d 1207, 1211-13 (Ala.Civ.App. 2003) (Murdock, J., concurring in the result).
Consistent with the foregoing, I particularly wish to note my disagreement with Judge Pittman's discussion of the so-called "overwhelming-necessity" standard in his special writing. For the reasons stated in my concurring opinion in Smith, which Judge Pittman acknowledges in his writing, I do not believe that "overwhelming necessity" is an accurate articulation of the standard that Alabama courts are required to follow in deciding whether a change of custody is in a child's best interests.
[2] Since the original custody determination, the father has remarried and the mother and the child now live within a half mile of the father and his new wife and his six-year-old stepson. The father and the child both testified as to the types of activities in which the child engages when he is in the father's custody. The child also testified as to his relationship with the father, and he expressed his desire to live with the father, although the child's young age means that his express preference is not entitled to as much weight as it might otherwise be. The father also testified that the mother had engaged in activities designed to alienate the child from the father and that the communication between the mother and the father had deteriorated. There was also testimony that the mother's paramour had stayed overnight in the mother and child's home on several occasions.