MURDOCK, Justice
(concurring specially).
In its opinion in this case, the Court of Civil Appeals acknowledged the standard *890 adopted in Ex parte McLendon, 455 So.2d 863 (Ala.1984) — “ ‘the positive good brought about by the change in custody [must] more than offset the disruptive effect of uprooting the child,’ ” 19 So.3d at 884 — but asserted that cases after McLen-don have increased the burden of proof on noncustodial parents by stating that the McLendon standard is necessarily a “heavy” or “very heavy” burden requiring proof of an “overwhelming necessity for a change”:
“ ‘Subsequent cases have made the burden of the noncustodial parent even heavier. ... Sexton v. Lambert, 611 So.2d 385 (Ala.Civ.App.1992), noted that the McLendon burden is “a very heavy burden.” 611 So.2d at 387. Klapal v. Brannon, 610 So.2d 1167 (Ala.Civ.App.1992), also described the McLendon burden as a “heavy burden” and added that the evidence in support of a modification of custody “must be so substantial as to disclose an obvious and overwhelming necessity for a change.” 610 So.2d at 1169. See also Whitfield v. Whitfield, 570 So.2d 700, 702 (Ala.Civ.App.1990); and Braswell v. Braswell, 460 So.2d 1339, 1341 (Ala.Civ.App.1984).’ ”
Russell v. Russell, 19 So.3d at 884 (quoting Ex parte Martin, 961 So.2d 83, 87 (Ala.2006)) (emphasis omitted). The week after the Court of Civil Appeals issued its opinion in this case, however, this Court issued its opinion in Ex parte Cleghorn, 993 So.2d 462 (Ala.2008). Rejecting the notion that the law now imposes a heavier burden than the burden imposed by McLendon, this Court in Cleghom specifically “reaffirm[ed] the McLendon standard as the standard to be applied when a party seeks a modification of custody.” 993 So.2d at 469.
The Cleghom Court did state that the burden of meeting the McLendon standard “typically is a heavy one.” 993 So.2d at 468. This statement is consistent with the fact that, “typically,” by the time there has been a material change in circumstances since the previous custody award (which must be shown to avoid the bar of the doctrine of res judicata), the child will have resided primarily with the custodial parent such a length of time and will have put down such “roots,” to use McLendon ⅛ term, that removing the child from that primary custodial arrangement will in fact cause substantial disruption in the child’s life. In such circumstances, proving that the positive good that will come from a change of custody will outweigh the disruptive effect of the change will be a heavy one.
On the other hand, where the disruptive effect of a change of custody will be less (perhaps because only a relatively short time has passed since the prior custody award, because the child was a teenager at the time of his parents’ divorce and both parents have continued to live in the same community and have substantial involvement in the child’s life, or for any other reason), the burden of proving that the benefit of a change of custody will “more than offset the disruptive effect of uprooting the child” will be less.
As this Court explained in Ex parte J.M.F., 730 So.2d 1190, 1194 (Ala.1998):
“It is ... well established that a noncustodial parent seeking a change of custody must show not only that he or she is fit to have custody, but that the change would materially promote the child’s best interest. Ex parte McLendon, 455 So.2d 863 (Ala.1984). This requires a showing that the positive good brought about by the modification would more than offset the inherently disruptive effect caused by uprooting the child. McLendon.”
(Emphasis added.) Consistent with this statement, the plurality opinion in DiIorio *891 v. Long, 839 So.2d 650, 655 (Ala.Civ.App.2001), explained: “As McLendon indicates, whether ... the promotion of a child’s welfare that will result from a custody modification will be material [is] ... measured against the disruption that will be caused by uprooting the child from the existing custodial arrangement.”
In Blackmon v. Scott, 622 So.2d 393, 394 (Ala.Civ.App.1993) (quoted with approval in Carroll v. Carroll, 902 So.2d 696, 699 (Ala.Civ.App.2004)), we find a reference to the “material promotion” standard as one “requiring the [parent seeking to modify custody] to show that a change in custody would materially promote the welfare and best interests of the child, offsetting the disruptive effect of uprooting the child.” See also R.K. v. R.J., 843 So.2d 774, 778 n. 4 (Ala.Civ.App.2002); Smith v. Smith, 865 So.2d 1207, 1211 (Ala.Civ.App.2003) (Mur-dock, J., concurring in the result); Gamble v. Segers, 833 So.2d 658, 662 (Ala.Civ.App.2002) (referring to a parent’s burden of demonstrating “how a change of custody will materially promote the best interests and welfare of the child so as to outweigh the disruption caused by such change of custody”); and Riley v. Riley, 882 So.2d 342, 345 (Ala.Civ.App.2002) (quoting Ex parte J.M.F.). See generally Spears v. Wheeler, 877 So.2d 607, 609 (Ala.Civ.App.2003) (Murdock, J., dissenting), and cases cited therein.
As I wrote in my dissent in Marusich v. Bright, 947 So.2d 1068 (Ala.Civ.App.2006):
“I cannot agree with the suggestion ... that a parent seeking to modify a prior custody order always bears a heavy burden of proof. It is true that such a parent will always have the burden of proving a material change of circumstances, without which the prior custody order will have res judicata effect. See, e.g., Self v. Fugard, 518 So.2d 727 (Ala.Civ.App.1987) (explaining that a child-custody determination is final with respect to the particular set of circumstances currently before the court but is subject to modification upon a showing of a subsequent material change of circumstances); and Spears v. Wheeler, 877 So.2d 607, 609 n. 1 (Ala.Civ.App.2003) (Murdock, J., dissenting); cf. In re B.B., 944 So.2d 960, 962 (Ala.Civ.App.2006) (quoting S.P. v. E.T., 957 So.2d 1127, 1131-32 (Ala.Civ.App.2005), in the context of a dependency proceeding). See generally Ex parte J.P., 641 So.2d 276 (Ala.1994). Once a material change of circumstances has been proven, however, the extent to which a child’s interests must be promoted by a proposed change of custody (and thus the weight of the petitioning parent’s ultimate burden) will depend on the degree of disruption that must be overcome before the court can conclude that the change will be in the child’s best interests. See Smith v. Smith, 865 So.2d 1207, 1211-13 (Ala.Civ.App.2003) (Murdock, J., concurring in the result).”
947 So.2d at 1073 (Murdock, J., dissenting).
The most oft-repeated maxim in our child-custody cases is that our decisions must reflect the best interest of the child. “ ‘The polestar,’ ” if you will, “ ‘in custody matters ... is ... the best interest of the child.’ ” McConnell v. McConnell, 718 So.2d 78, 79 (Ala.Civ.App.1998) (quoting Smith v. Smith, 448 So.2d 381, 383 (Ala.Civ.App.1984)). By making sure that courts do not forget that, following an initial custody award, the court is no longer writing on a “blank slate” and must give due consideration to the disruption that could be caused in the event of a subsequent change of custody, the McLendon standard serves merely as device designed by the Court to facilitate the search for each child’s best interest. We should es *892 chew any effort to interpret or add to the McLendon standard in a way that could cause it instead to serve as an impediment in that search.