DeAnna Allen and Elbert Ray Lambert, allegedly married at common law, are the parents of Virgil and Rachel Lambert, the children in this custodial dispute.
The dispute began on September 19, 1991, when the mother relinquished custody of the children to Barbara Sexton and her husband, the children's godparents. On that day the mother and Mrs. Sexton went to the Talladega County Courthouse and together filed the petition requesting that temporary custody of the children be granted to Mrs. Sexton. The petition averred that Mrs. Sexton should be given temporary custody because the mother feared that the father would harm the children if they remained in their custody. The Juvenile Court of Talladega County entered an order granting Mrs. Sexton custody of the two children. At that time Virgil was approximately two months old and Rachel was approximately 14 months old.
On November 21, 1991 a hearing was held in which Mrs. Sexton and the mother agreed that temporary custody would remain with Mrs. Sexton. The father was aware of the hearing. The mother requested that Mrs. Sexton retain custody of the children because the mother did not have a place to live.
On December 18, 1991 the mother and father filed a petition seeking to regain custody of the children. A hearing was held in February 1992. The trial court returned custody of the children to the parents. Mrs. Sexton appeals.
Mrs. Sexton asserts that the trial court erred in returning custody to the parents. She specifically contends that the parents failed to meet their burden of proof "in showing that it would be in the best interest *Page 387 
of the minor children to return custody to them."
The parents contend that they have a prima facie right to custody of the children and that the burden was on Mrs. Sexton to prove that they were unfit parents. They insist that Mrs. Sexton failed to carry that burden.
The trial court summarily granted custody to the parents. There is no indication from the record or the order of what standard the court applied in reaching its judgment.
It is the rule that a parent has the prima facie right to the custody of his or her child as against a third person. That right may be overcome only by clear and convincing evidence that the parent is so unfit for custody that the best interests of the child will be served by granting custody to the third party. Ex parte Terry, 494 So.2d 628 (Ala. 1986). The right does not continue after a voluntary forfeiture of custody, or a prior decree removing custody, or temporary custody, from the parent and awarding it to a third party. Ex parte McLendon,455 So.2d 863 (Ala. 1984).
The parents lost their preeminent right to custody when they agreed to let Mrs. Sexton have temporary custody of the children. Because of the decree awarding custody to Mrs. Sexton, the burden shifted to the parents to establish that a return of custody would materially promote the best interests of the children. Ex parte McLendon. McLendon provides that the party seeking the modification must show that material changes affecting the welfare of the child have occurred since the last decree and that the positive good from the change in custody would more than offset the inherently disruptive effect brought about by uprooting the child. Ex parte McLendon.
It is seldom that this court will reverse a trial court's custodial decision. Calabrisi v. Boone, 470 So.2d 1255
(Ala.Civ.App. 1985). We presume that the trial court's judgment is correct. We will not reverse that judgment unless an abuse of discretion is shown or unless the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Calabrisi.
The parents assert that the evidence supports the trial court's award of custody. Their summary of that supporting evidence is as follows:
 "Mr. Lambert testified that he loved and missed his children. Petitioners also testified that they made numerous attempts to visit the children while the children were in appellant's home. The Petitioners presented evidence that their children were always well cared for physically and emotionally. There was no evidence presented that Petitioners were so unfit that the best interest of the children would be better served by vesting custody in Appellant. The evidence is undisputed that the children were never harmed, neglected, or abused while in the custody of the Petitioners."
The McLendon burden is a very heavy burden, and our review of the evidence presented reveals that the parents failed to meet that burden. The evidence simply does not show that the interests and welfare of the children would be materially promoted by transferring custody to the parents. The parents failed to present any evidence that there has been a material change affecting the interests of the children since the last decree. In fact, the mother testified that nothing had changed since the last decree was entered, except that she now wants them returned.
The record reflects that the parents do not have a stable relationship and that the relationship has been quite "stormy." As requested by the court, the Department of Human Resources investigated the parents' familial situation. Following the investigation, the department made the following recommendation:
 "The Department of Human Resources does not recommend returning the children to their parents at this time. The parents' relationship is not stable enough at this time to ensure the children would be protected or properly cared for. It is recommended the parents consider joint counseling in an effort to establish a *Page 388 
sound relationship that will lead to suitable environment in which two children can be reared properly."
The mother's sister testified that, in her opinion, the parents could not properly care for the children. The father's mother, two sisters, and brother also testified that the parents were not capable of providing adequate care for the children. The relatives' allegations were supported by their recollections of specific instances. We find it unnecessary to delve into the specifics of the allegations. It is sufficient to say that there was an abundance of testimony in the record regarding the questionable character of the parents.
The record reveals that Mrs. Sexton took excellent care of the children and that the children were in a loving and warm environment. The parties practically stipulated to the fact that Mrs. Sexton had the ability and the desire to care for the children.
In view of the evidence, the only conclusion that we can draw from the order of the court is that it may have incorrectly given the parents the benefit of the presumption that a natural parent has a prima facie right to custody of his or her child. In view of the evidence, that was in error. McLendon is the applicable standard to be applied. Because the parents failed to meet the burden imposed by McLendon, the judgment of the trial court is due to be reversed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
All the Judges concur.