On Application for Rehearing.
 

 BRYAN, Judge.
 

 The opinion of September 14, 2007, is withdrawn, and the following is substituted therefor.
 

 Angela Webster Russell (“the mother”) appeals a judgment transferring primary physical custody of the parties’ 10-year-old son (“the child”) from her to David Wade Russell (“the father”).
 
 [1]
 
 We reverse and remand.
 

 Facts
 

 Because the action was tried before the trial judge without a jury and the trial judge heard evidence ore tenus, “we must view ‘ “the evidence in the light most favorable to the prevailing partfy].” ’ ”
 
 Diggs v. Diggs,
 
 910 So.2d 1274, 1275 (Ala.Civ.App.2005) (quoting
 
 Architectura, Inc. v. Miller,
 
 769 So.2d 330, 332 (Ala.Civ.App.2000), quoting in turn
 
 Driver v. Hice,
 
 618 So.2d 129, 131 (Ala.Civ.App.1993)). Viewed in that manner, the evidence established the following facts.
 

 The father, who was a police officer from July 1995 until February 2002, has been working as a salesman at Ben Atkinson
 
 *881
 
 Chevrolet in Tallassee since January 2003. The mother, who is a registered nurse, works for Baptist Medical Center East (“Baptist East”) in Montgomery.
 

 The Elmore Circuit Court divorced the parties in 1999 and awarded the mother primary physical custody of the child. The parties then lived apart from one another for several years.
 

 In approximately 2001, the mother became addicted to Lortab and began taking a minimum of six tablets of Lortab per day. She also sometimes took Oxycontin, methadone, morphine, and Demerol.
 

 In March 2002, the parties attempted a reconciliation; the father moved into the mother’s house in Prattville, and the parties lived together until December 2002. While they were living together, the father discovered that the mother was addicted to drugs and advised her to seek treatment for her addiction. In December 2002, the father moved from the mother’s house to his father’s house. Despite his knowledge of the mother’s drug addiction, the father did not seek a change in custody when he moved out of the mother’s house.
 

 Shortly before May 2, 2003, the mother informed her employer that she was addicted to drugs and needed treatment. On May 2, 2003, the mother began an inpatient drug-rehabilitation program at Bradford Health Services (“Bradford”) in Warrior. The mother gave the father her power of attorney while she was in rehabilitation. The father moved into the mother’s house in Prattville and took care of the child while the mother was a patient at Bradford.
 

 During her stay at Bradford, the mother violated the facility’s rules twice, once when she used a substance containing ephedrine and a second time when she did not come forward and tell the staff that her roommate was sneaking a male patient into their room. As discipline for using the substance containing ephedrine, the mother was not allowed to go home for one weekend. As discipline for failing to come forward and tell the staff about her roommate’s violating the rules, two weeks were added to the mother’s stay at Bradford. A psychologist at Bradford opined that the mother has a highly addictive personality.
 

 The mother was discharged from Bradford in July 2003; however, she was required to continue out-patient treatment, and Bradford advised her to focus on her recovery for the next year. She agreed that, while she was fulfilling the requirements of her out-patient treatment, the child could live with the father and attend school where the father was living. The father moved with the child to Tallassee, and, when school began in the fall of 2003, the child began attending school in Tallas-see.
 

 On July 14, 2003, the mother signed an agreement with the Alabama Nursing Board pursuant to the Board’s Voluntary Disciplinary Alternative Program. In the agreement, the mother agreed, among other things, not to take prescribed medication if her prescription was more than four months old. Later in July 2003, the mother returned to work as a nurse at Baptist East, although she had to be assigned to a different job because she was prohibited from access to narcotics for six months. Because the new position required her to work three 12-hour shifts each week and those shifts did not end until 7:30 at night, she agreed that the child could continue living with the father.
 

 In October 2003, the father and the child again moved into the mother’s house and lived with the mother; however, the father moved out of the mother’s house in February 2004 and began living in Wetumpka. Because the mother’s work schedule had not changed, she agreed that the child
 
 *882
 
 could live with the father in Wetumpka. Despite the move to the mother’s house in Prattville in October 2003 and the subsequent move to Wetumpka in February 2004, the child went to school in Tallassee the entire 2003-2004 school year. During the spring of 2004, the child visited the mother one weeknight every two weeks and every other weekend. During June and July 2004, the child spent approximately as much time visiting the mother as he did living with the father.
 

 In mid-July 2004, Baptist East agreed to let the mother work a schedule that would allow her to be the child’s primary caregiver. The mother told the father that the child could resume living primarily with her and that she wanted to enroll the child in school in Prattville. The father told the mother that he would not allow the child to resume living primarily with her, that he would not allow her to enroll the child in school in Prattville, and that he would go to court to obtain primary physical custody of the child. On July 21, 2004, the mother went to the father’s apartment and insisted that the father give her the child. The father refused to give her the child, and an argument ensued. Someone called the Wetumpka police, who arrested both the father and the mother. Ultimately, the Wetumpka Municipal Court acquitted both the father and the mother of the charges against them arising from the incident on July 21.
 

 After the police released the mother on July 21, she showed the police the written divorce judgment granting her primary physical custody of the child, and the police accompanied her back to the father’s apartment to ensure that the father let her have the child. The mother took custody of the child and enrolled him in school in Prattville.
 

 The father filed this action, seeking primary custody, on August 4, 2004. On September 1, 2004, before the mother had been served with process, the trial court, without affording the mother notice and an opportunity to be heard, issued an ex parte order granting the father pendente lite custody.
 
 [2]
 
 That same day, the father picked up the child at his school in Pratt-ville without informing the mother and enrolled the child in school in Tallassee.
 

 The father has not lived in Tallassee since he moved from there to the mother’s house in Prattville in October 2003. He has lived in Wetumpka ever since he moved out of the mother’s house in February 2004, although he works in Tallassee. The father misrepresented to the school in Tallassee that he lived in Tallassee in order to enroll the child in that school in the fall of 2004. Despite suffering from attention deficit/hyperactivity disorder, the child has done well in school in Tallassee.
 

 On the night of December 25, 2004, while the child was visiting her, the mother took a Darvocet for a migraine headache. Although a physician had prescribed the Darvocet, the prescription was more than four months old when the mother took the Darvocet on December 25, 2004. Consequently, although the mother had a valid prescription that had not expired, her taking the Darvocet constituted a violation of the alternative-discipline agreement she had entered into with the Alabama Nursing Board on July 14, 2003. As a result, she entered into another alternative-discipline agreement with the Alabama Nursing Board on February 1, 2005. The mother is no longer prohibited from access to narcotics, and her employer has not observed any indication that she has
 
 *883
 
 abused drugs since she returned to work in the summer of 2003.
 

 The mother testified that the father had abused alcohol. In addition, the child’s maternal grandmother testified that, on several occasions when the father had come to her house to pick up the child, she had observed signs that the father had consumed too much alcohol to be driving. The father denied ever having abused alcohol; however, the trial judge found that the father had had a substance-abuse problem for an unspecified period between the 1999 divorce and the trial of the present action.
 

 Procedural History
 

 After learning that the trial court had issued an ex parte order granting the father pendente lite custody on September 1, 2004, the mother moved the trial court to reconsider that order on the ground that it violated the mother’s due-process rights. After the trial court reaffirmed its September 1 order on September 8, 2004, the mother petitioned this court for a writ of mandamus.
 
 [3]
 

 On April 29, 2005, this court issued a writ of mandamus ordering the trial judge to vacate his September 1 and September 8, 2004, orders granting the father penden-te lite custody and to hold an evidentiary hearing on the father’s motion seeking pendente lite custody. Because it was then close to the end of the school year, the parties agreed that the child could stay with the father and attend school in Tallas-see until the end of that school year. Accordingly, the trial court entered an order on May 4, 2005, ordering that the child should remain with the father and attend school in Tallassee until the end of that school year and that, thereafter, the mother would have primary physical custody of the child until the trial, which was scheduled for May 26, 2005.
 

 At the end of the 2004-2005 school year, the mother took primary physical custody of the child. The trial began on May 26, but it was recessed and was scheduled to resume on October 6, 2005. Sometime between May 26 and July 18, 2005, the mother told the father that she intended to enroll the child in school in Prattville, where she was living. Consequently, the father, on July 18, 2005, moved the trial court for a temporary restraining order (“TRO”) prohibiting the mother from removing the child from the school rolls in Tallassee and enrolling him in school in Prattville. On July 26, 2005, the trial court, without a hearing, granted the TRO; however, because the mother had already removed the child from the school rolls in Tallassee and enrolled him in school in Prattville before the trial court had issued the TRO on July 26, the trial court, again without a hearing, amended the TRO on August 2, 2005, to order the mother to remove the child from the school rolls in Prattville and to enroll him in school in Tallassee.
 

 The day before the trial was scheduled to resume on October 6, 2005, the trial court ordered that the trial be continued until February 22, 2006. The trial resumed on February 22 and concluded on February 23.
 

 Following the conclusion of the trial, the trial court entered a judgment transferring primary physical custody to the father. In pertinent part, the judgment stated:
 

 “[The court] finds as follows:
 

 “1. That the parties have maintained a relationship!,] with the parties living together and apart on several occasions
 
 *884
 
 since their Final [Divorce] Decree on November 29,1999.
 

 “2. That during the period [between] the parties’ Final [Divorce] Decree and the filing of this Petition, both the mother and the father have had periods when substance abuse has been involved, but one parent to a lesser extent than the other.
 

 “3. That during the period of time when the mother sought treatment, the father, David Wade Russell, maintained the child either in his home or in the home of the mother.
 

 “4. That since the period the parties’ child has resided with the father, the child has done well in school and the mother has maintained a relationship with her child.
 

 [[Image here]]
 

 “6. That it is to the child’s best interest and the benefits to the parties’ child ... outweigh any detrimental effect for his primary residence to be changed from the mother, Angela Marie Russell, and placed with the father, David Wade Russell, subject to the reasonable visitation schedule as set out herein. The fact that the parties’ child has resided with the father for a prolonged period is not considered in favor of or against any party.
 

 “7. That the mother, Angela Marie Russell shall have each alternate weekend from Friday to Sunday, and every other week during the school summer vacation, with the provision that the child shall be with the father on the week immediately preceding school starting. Additionally, the mother shall have the seven days immediately preceding December 24 and including that day until 6:00 p.m. Additionally Mother shall have Mother’s Day and the father shall have Father’s Day.”
 

 The mother timely appealed and moved the trial court to stay the judgment pending appeal. The trial court granted the stay.
 

 Analysis
 

 On appeal, the mother argues that the trial court erred in transferring primary custody to the father because, she says, the father’s evidence did not meet the evidentiary burden for changing custody established by
 
 Ex parte McLendon,
 
 455 So.2d 863 (Ala.1984).
 

 “[T]he
 
 McLendon
 
 test for a change of custody after custody is awarded in a divorce judgment is that the noncustodial parent seeking a change in custody must demonstrate (1) that he is fit to be the custodial parent; (2) that material changes that affect the child’s welfare have occurred since the original award of custody; and (3) that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child.
 

 “Subsequent cases have made the burden of the noncustodial parent even heavier....
 
 Sexton v. Lambert,
 
 611 So.2d 385 (Ala.Civ.App.1992), noted that the
 
 McLendon
 
 burden is ‘a very heavy burden.’ 611 So.2d at 387.
 
 Klapal v. Brannon,
 
 610 So.2d 1167 (Ala.Civ.App.1992), also described the
 
 McLendon
 
 burden as a ‘heavy burden’ and added that the evidence in support of a modification of custody ‘must be so substantial as to disclose an obvious and overwhelming necessity for a change.’ 610 So.2d at 1169. See also
 
 Whitfield v. Whitfield,
 
 570 So.2d 700, 702 (Ala.Civ.App.1990); and
 
 Braswell v. Braswell,
 
 460 So.2d 1339, 1341 (Ala.Civ.App.1984).
 

 [[Image here]]
 

 “... [T]his Court notes once again that the
 
 McLendon
 
 burden is ‘a very heavy burden.’
 
 Sexton v. Lambert,
 
 611 So.2d at 387. We also note that the evidence
 
 *885
 
 in support of a modification of custody must be substantial and
 
 must demonstrate an overwhelming necessity for a change,
 
 as required by
 
 Klapal v. Brannon,
 
 610 So.2d at 1169.”
 

 Ex parte Martin,
 
 961 So.2d 83, 87-88 (Ala.2006) (emphasis added).
 

 After carefully reviewing the evidence, we conclude that the evidence did not “demonstrate an overwhelming necessity for a change.”
 
 [4]
 

 Martin,
 
 961 So.2d at 88. Although the evidence demonstrated that an overwhelming necessity for a change in custody had existed at one time, i.e., when the mother was addicted to drugs and undergoing treatment for that addiction, it did not demonstrate that an overwhelming need for a change existed as of the date the trial ended because, by then, the mother had abstained from abusing drugs for approximately two and one-half years.
 
 See B.S.L. v. S.E.,
 
 875 So.2d 1215, 1224 (Ala.Civ.App.2003) (reversing a change in custody based on the mother’s history of drug and alcohol abuse when the mother had voluntarily sought treatment and had abstained from abusing drugs and alcohol for almost two years as of the date of trial). The father argues that the mother’s taking a Darvoeet on December 25, 2004, constituted a relapse into drug abuse; however, although the Nursing Board had prohibited the mother from taking prescribed medication more than four months after the date of the prescription, her prescription for the Darvoeet was nonetheless valid. Thus, her taking the Darvoeet did not constitute a relapse into drug abuse despite its constituting a violation of her alternative-disciplinary agreement with the Nursing Board. Moreover, the Nursing Board did not deem the violation of her agreement to be serious enough to prevent her from working as a nurse and to prohibit her from access to narcotics.
 

 The father also argues that the mother was guilty of domestic violence that created a presumption in favor of changing custody pursuant to § 30-3-130 et seq., Ala.Code 1975; however, we find no merit in the father’s argument that the mother was guilty of domestic violence.
 

 In concluding that the evidence met the standard for a change in custody, the trial court erroneously applied the law to the facts. A trial court’s application of the law to the facts is not entitled to a presumption of correctness.
 
 See, e.g., Fadalla v. Fadalla,
 
 929 So.2d 429, 433 (Ala.2005) (“ ‘[T]he ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’
 
 [Wattman v. Rowell,
 
 913 So.2d 1083, 1086 (Ala.2005) ].”). Therefore, because the evidence did not establish an overwhelming necessity for a change in custody, we reverse the trial court’s judgment and remand the action to the trial court for further proceedings consistent with this opinion.
 

 OPINION OF SEPTEMBER 14, 2007, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; MOTION TO STRIKE
 
 *886
 
 APPLICATION FOR REHEARING DENIED; REVERSED AND REMANDED.
 

 THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
 

 PITTMAN, J., concurs in the result, without writing.
 

 [1]
 

 . This is the second time this postdivorce custody proceeding has been before us. In
 
 Ex parte Russell,
 
 911 So.2d 719 (Ala.Civ.App.2005), we issued a writ of mandamus ordering the trial judge to vacate two orders awarding the father pendente lite custody because those orders violated the mother's due-process rights.
 

 [2]
 

 . See
 
 note 1.
 
 Ex parte Russell,
 
 911 So.2d 719 (Ala.Civ.App.2005), addressed the September 1, 2004, order and a supplemental order entered on September 8, 2004.
 

 [3]
 

 .
 
 See
 
 notes 1 and 2. For more detail regarding the September 1 and September 8 orders,
 
 see Ex parte Russell,
 
 911 So.2d 719 (Ala.Civ.App.2005).
 

 [4]
 

 . The author of this opinion has previously stated that he believes that the overwhelming-necessity-for-a-change standard was not contemplated by the Supreme Court when it decided
 
 McLendon, see Bledsoe v. Cleghorn,
 
 993 So.2d 456, 462 (Ala.Civ.App.2007) (Biyan, J., concurring specially); however, the Supreme Court made it clear in
 
 Martin
 
 that that standard must be met, and this court is bound by the Supreme Court’s decision in
 
 Martin. See
 
 § 12-3-16, Ala.Code 1975 ("The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals .... ’’), and
 
 Ex parte Chatmon,
 
 968 So.2d 999 (Ala.Civ.App.2007).