Earl R. Cleghorn petitioned this Court for the writ of certiorari after the Court of Civil Appeals reversed the decision of the trial court, which had modified a previous custody order and awarded Cleghorn custody of Cleghorn and Tina M. Bledsoe's minor daughter. We granted certiorari review to determine whether the Court of Civil Appeals' decision conflicts with our decision in Ex parte McLendon,455 So.2d 863 (Ala. 1984), and to decide whether we should overrule portions of our decisions in *Page 464 Ex parte Martin, 961 So.2d 83 (Ala. 2006), andEx parte Peppers, 703 So.2d 299 (Ala. 1997), because those cases ostensibly impose an additional requirement on theMcLendon standard for the modification of a custody order. We reverse and remand.
 Facts and Procedural History
Bledsoe and Cleghorn were divorced on October 11, 2001. The divorce judgment awarded Bledsoe custody of Bledsoe and Cleghorn's minor daughter, who was adopted; the judgment allowed Cleghorn scheduled visitation with the child. Bledsoe married her current husband, Steven Bledsoe ("the stepfather"), approximately three months after Bledsoe and Cleghorn were divorced. Shortly after Bledsoe married the stepfather, problems arose when Cleghorn would pick up the child for scheduled visitations. Cleghorn alleges that Bledsoe and the stepfather would force Cleghorn, who is paraplegic, to get out of his truck and go to Bledsoe's vehicle to get the child. These problems led the trial court to order, among other things, that the visitation exchanges take place in the parking lot of the Evergreen Police Department, that Bledsoe shall take the child to and from Cleghorn's vehicle, and that the parties not harass one another.
In spite of the court order, problems persisted, and the parties returned to court. Cleghorn testified that Bledsoe and the stepfather were trying to cut him off from his daughter or to force him out of his daughter's life. He alleges that Bledsoe and the stepfather tried to intimidate him and that the stepfather threatened him. Cleghorn also alleges that Bledsoe and the stepfather would try to demean him in front of the child and would spank the child for talking to him on the telephone. He testified that the stepfather hit him when he was waiting for the child in his truck during one of the visitation exchanges. Cleghorn also alleges that Bledsoe did not keep the child clean and that she refused to give Cleghorn information concerning the child's grades in school and activities or ceremonies in which the child was involved. Also, according to Cleghorn, Bledsoe and the stepfather told the child to call Cleghorn by his first name and to call the stepfather "Daddy."
Bledsoe disputes most of Cleghorn's allegations. She admits that she violated a court order by telling the child, when Cleghorn was not present, that she was adopted. She also admits that at the child's kindergarten graduation, when the child had a poem and a rose to give to each of her parents, Bledsoe took both and would not let the child give a poem and a rose to Cleghorn until after the ceremony when Cleghorn had returned to his truck. Bledsoe also admits that she did not let Cleghorn kiss the child on the mouth, but she insists that this was for health reasons and that no one kisses the child on the mouth in her presence.
Cleghorn argues that there was evidence before the trial court indicating that Cleghorn's schedule was better for taking care of the child. Bledsoe's work schedule requires that the child be dropped off at school 45 minutes before school starts and then taken to the stepfather's restaurant for a few hours each day after school. Cleghorn's schedule would allow him to drop the child off closer to the time school actually starts and to pick her up at the end of her school day. Cleghorn also argues that when the child is with him, she is taught to respect her mother and stepfather but that when she is with Bledsoe and the stepfather, the child is not encouraged to respect Cleghorn. In fact, Cleghorn argues, there was ample evidence from which the trial court could determine that Bledsoe and the stepfather actively set out to harm Cleghorn's relationship with the *Page 465 
child, thereby subjecting her to emotional abuse and acting in a manner that is dangerous and harmful to the child's well-being.
The trial court entered a judgment awarding custody to Cleghorn. Bledsoe appealed, and the Court of Civil Appeals reversed the trial court's judgment, stating that the evidence before the trial court "did not reveal a material change affecting the welfare of the child, focus on how a change in custody would materially benefit the child, or demonstrate an overwhelming and obvious need for a change in custody."Bledsoe v. Cleghorn, 993 So.2d 456, 462
(Ala.Civ.App. 2007). Cleghorn then petitioned this Court for certiorari review, and we granted the petition to determine whether the Court of Civil Appeals' decision conflicts with our decision in Ex parte McLendon, 455 So.2d 863
(Ala. 1984), and whether we should overrule the portions of our decisions in Ex parte Martin, 961 So.2d 83 (Ala. 2006), and Ex parte Peppers, 703 So.2d 299 (Ala. 1997), that appear to imply that the party seeking modification of a custody order must demonstrate an obvious and overwhelming need for the change, which appears to be an additional element to the standard established in Ex parte McLendon for the modification of a custody award.
 Standard of Review "When this Court reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume that the trial court's decision is correct:`"A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong. . . ."'"
Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001) (quotingEx parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting in turn Phillips v. Phillips, 622 So.2d 410, 412
(Ala.Civ.App. 1993)). "This Court reviews questions of law de novo." Alabama State Bar v. Caffey, 938 So.2d 942, 945
(Ala. 2006) (quoting Tipler v. Alabama State Bar,866 So.2d 1126, 1137 (Ala. 2003)).
 Analysis I
We first address whether we should dismiss Cleghorn's petition for the writ of certiorari for failure to comply with Rule 28(a)(3)[1] and (a)(8), [2] Ala. R.App. P., because his brief does not include the statement of jurisdiction or a standard of review. Turning first to Bledsoe's argument that Cleghorn fails to supply a statement of jurisdiction, we conclude that this argument is without merit because Rule 28(a)(3), Ala. R.App. P., has eliminated the obligation to include a statement of jurisdiction in briefs "in cases on certiorari review." Cleghorn's brief, however, does not contain a standard of review. Cleghorn admits in his reply brief "that the conclusory statement of the standard of review was inadvertently omitted" from his brief. Cleghorn's reply brief at 10. Nevertheless, Cleghorn contends that the omission from his brief of the standard of *Page 466 
review is not a "fatal deficiency" because, he says, the applicable standard of review was incorporated in the argument section of his brief and Bledsoe therefore was not prejudiced by the omission of the standard of review at the beginning of his brief. Our review of Cleghorn's brief reveals that he is partially correct that the standard of review is incorporated into the argument section of his brief. The argument section states the correct standard of review when evidence is presented ore tenus in a child-custody dispute; however, he makes no mention of the standard of review this Court should apply when the question presented is a pure question of law. Cleghorn's brief, thus, does not comply with Rule 28(a)(8), Ala. R.App. P., and we must decide whether this noncompliance alone warrants the dismissal of his petition.
When we have dismissed an action for noncompliance with Rule 28, Ala. R.App. P., we have done so because of the party's failure to support his argument with citations to caselaw, statutes, or the relevant portions of the record. See Exparte Borden, [Ms. 1050042, August 17, 2007] ___ So.2d ___, ___ (Ala. 2007) (a party fails to comply with Rule 28(a), Ala. R.App. P., when "there is no argument presented in the brief and there are few, if any, citations to relevant legal authority, resulting in an argument consisting of undelineated general propositions"); Jacobs v. Jacobs,583 So.2d 1337, 1338 (Ala. 1991) ("Appellants who fail to comply with A[la]. R.App. P. 28(a) place themselves in a perilous position. While we attempt to avoid dismissing appeals . . . on what may be seen as technicalities, we are sometimes unable to address the merits of an appellant's claim when the appellant fails to articulate that claim and presents no authorities in support of that claim."); and Shows v. Freedlander, Inc.,523 So.2d 376, 376 (Ala. 1988) (granting motion to dismiss because the appellant "substantially failed to comply with Rule 28(a), Ala. R.App. P.").
In certain circumstances, Alabama courts have analyzed the merits of a claim despite a party's noncompliance with Rule 28(a), Ala. R.App. P. Kirksey v. Roberts,613 So.2d 352, 353 (Ala. 1993) (when "we are able to adequately discern the issue [the appellant] presents, in spite of his failure to present authorities in support of his claim, we will not affirm merely because of a technicality"); Cloud v. Cloud,833 So.2d 649, 650 (Ala.Civ.App. 2002) (concluding that dismissal was not warranted when the party did not "substantially fail[] to comply with the requirements of Rule 28, [Ala. R.App. P.]"). With the exception of Cleghorn's omission of a standard of review, his brief complies with the requirements of Rule 28(a), Ala. R.App. P. The issues on appeal are clearly discernible, the argument section of Cleghorn's brief contains numerous citations to legal authority to support his arguments, and his brief cites the portions of the record he relies upon. Therefore, we will exercise our discretion and consider his petition. Dubose v. Dubose, 964 So.2d 42,46 n. 5 (Ala.Civ.App. 2007) ("[T]his court may choose to affirm a case on the basis of Rule 28[, Ala. R.App. P.,] when an appellant's brief fails to comply with the rule, but this court is by no means required to do so." (emphasis omitted) (citingKirksey, 613 So.2d at 353)).
 II
We next address the substantive issue — whether the decision of the Court of Civil Appeals, which reversed the trial court's judgment awarding Cleghorn custody of the child, conflicts with Ex parte McLendon. In Ex parteMcLendon, we held that the trial court cannot order a change of custody "`unless [the parent] can show that a change of the custody will *Page 467 
materially promote [the] child's welfare.'"455 So.2d at 865 (quoting Greene v. Greene, 249 Ala. 155, 157,30 So.2d 444, 445 (1947)). We noted in Ex parte McLendon
that "[i]t is important that [the parent] show that the child's interests are promoted by the change, i.e., that [the parent seeking the change in custody] produce evidence to overcome the `inherently disruptive effect caused by uprooting the child.'"455 So.2d at 866. Since Ex parte McLendon, we have repeatedly affirmed that standard as the one that should govern in deciding whether a change in custody is warranted.[3]
Cleghorn argues that the Court of Civil Appeals' decision here conflicts with Ex parte McLendon because, he says, the Court of Civil Appeals did not adhere to the McLendon
standard in reaching its decision; instead, he says, it applied a different standard, one that required him to demonstrate an "overwhelming necessity" for the change in custody. Cleghorn argues that the overwhelming-necessity requirement is inconsistent with the McLendon standard because "[t]o require that a parent seeking a change in custody after a prior custody award provide proof of an overwhelming necessity for the change is too great a burden, one almost impossible to meet." Cleghorn's brief at 21.
Bledsoe contends that the Court of Civil Appeals' decision does not conflict with Ex parte McLendon because "the court of civil appeals expressly stated that, applying the Exparte McLendon standard only, the trial court's change in custody did not comply with that standard." Bledsoe's brief at 15. Bledsoe maintains that the Court of Civil Appeals applied the McLendon and the overwhelming-necessity standards separately and concluded that Cleghorn did not satisfy the overwhelming-necessity standard only after it had already determined that he had failed to demonstrate that the change in custody materially promoted the child's welfare and thus had not satisfied the McLendon standard.
After reviewing the Court of Civil Appeals' decision, we agree with Cleghorn that the Court of Civil Appeals deviated from the strict McLendon standard. The Court of Civil Appeals' opinion states that "the McLendon burden [is] a heavy burden" and "`that the evidence in support of a modification of custody "must be so substantial as to disclose an obvious and overwhelming necessity for a change."'" Bledsoe,993 So.2d at 461 (quoting Ex parte Martin,961 So.2d at 87). This statement combines the McLendon standard and the overwhelming-necessity standard. In fact, the Court of Civil Appeals explicitly stated that the overwhelming-necessity standard is one that a party seeking a custody modification must satisfy "[i]n addition" to the McLendon standard.993 So.2d at 465 ("In addition [to *Page 468 
the McLendon standard], a noncustodial parent must prove an obvious and overwhelming necessity for the change of custody."). By requiring Cleghorn to prove an overwhelming necessity for a modification of custody, the Court of Civil Appeals imposed a burden beyond the standard established byEx parte McLendon[4]
The Court of Civil Appeals relied on our recent decision inEx parte Martin, supra. In Ex parte Martin, we referred to the overwhelming-necessity standard, stating:
 "Subsequent cases have made the burden of the noncustodial parent even heavier. Rich v. Rich, 887 So.2d 289 (Ala.Civ.App. 2004), applied the McLendon burden to temporary changes of custody as well as permanent changes. Sexton v. Lambert, 611 So.2d 385 (Ala.Civ.App. 1992), noted that the McLendon burden is `a very heavy burden.' 611 So.2d at 387. Klapal v. Brannon, 610 So.2d 1167 (Ala.Civ.App. 1992), also described the McLendon burden as a `heavy burden' and added that the evidence in support of a modification of custody `must be so substantial as to disclose an obvious and overwhelming necessity for a change.'"
961 So.2d at 88. We also referred to the overwhelming-necessity standard in Ex parte Peppers, 703 So.2d 299
(Ala. 1997):
 "The courts of Alabama have emphasized that a change of custody from one parent to another is not a decision to be made lightly; on the contrary, it may be made only where the evidence discloses an obvious and overwhelming necessity for change. Glover v. Singleton, 598 So.2d 995 (Ala.Civ.App. 1992)."
703 So.2d at 302 (emphasis omitted). Cleghorn invites this Court to overrule those portions of Ex parte Martin
and Ex parte Peppers that can be read to imply that a party seeking a change in custody must show, in addition to showing that a change in custody comports with theMcLendon standard, an overwhelming necessity for the change.
Our decision in Ex parte McLendon provides that a party seeking a change in custody must show that the change "will materially promote [the] child's welfare."455 So.2d at 865. The McLendon standard is a "rule of repose," meant to minimize disruptive changes of custody because this Court presumes that stability is inherently more beneficial to a child than disruption. Ex parte McLendon,455 So.2d at 865. It is founded on the longstanding principle that "[i]t is the court's duty to scrupulously guard and protect the interests of children. And in the context of child-custody proceedings, the dominant consideration is always the best interest of the child." Ex parte Fann, 810 So.2d 631,638 (Ala. 2001). See also McCartney v. McCartney, [Ms. 2041048, July 27, 2007] ___ So.2d ___, ___ (Ala.Civ.App. 2007) ("`The controlling consideration in child-custody matters is always the best interests of the child.'" (quoting Patrickv. Williams, 952 So.2d 1131, 1140 (Ala.Civ.App. 2006))). The burden imposed by the McLendon standard is typically a heavy one, recognizing the importance of stability, [5] but the overwhelming-necessityrequirement *Page 469 
places a nearly insurmountable burden on the party seeking a modification of custody, and, in doing so, elevates stability above the best interests of the child.[6]
We reaffirm the McLendon standard as the standard to be applied when a party seeks a modification of custody, and we hold that the decision of the Court of Civil Appeals here conflicts with Ex parte McLendon. Moreover, insofar as they suggest that a party seeking a modification of a custody order must prove an overwhelming necessity for the change in custody, we hereby overrule Ex parte Martin and Exparte Peppers.
 Conclusion
We reverse the judgment of the Court of Civil Appeals and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.*
LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
COBB, C.J., recuses herself.
[1] Rule 28(a)(3), Ala. R.App. P., provides that a petitioner's brief shall contain "[a] statement of jurisdiction including (i) the basis for the jurisdiction of the court to which the appeal is taken (with citations to the applicable statutory provisions and stating relevant facts establishing jurisdiction), and (ii) the filing dates establishing the timeliness of the appeal."
[2] Rule 28(a)(8), Ala. R.App. P., provides that a petitioner's brief shall contain "[a] concise statement of the standard of review applicable to each issue."
[3] Ex parte Snider, 929 So.2d 447, 450 (Ala. 2005) (the party seeking a change in custody "must show that the change of custody will materially promote the child's welfare"); Ex parte J.M.F., 730 So.2d 1190, 1194
(Ala. 1998) ("It is, of course, well established that a noncustodial parent seeking a change of custody must show not only that he or she is fit to have custody, but that the change would materially promote the child's best interests. This requires a showing that the positive good brought about by the modification would more than offset the inherently disruptive effect caused by uprooting the child." (citations omitted));Ex parte Johnson, 673 So.2d 410, 413 (Ala. 1994) ("[A]n existing custody arrangement will be modified only if the modification materially promotes the best interests and welfare of the child."); and Ex parte P.G.B., 600 So.2d 259,261 (Ala. 1992) ("The father bore the burden of proving that the change of custody `materially promoted the welfare and best interest of [the child]' in a manner sufficient to more than offset the effects caused by removing [the child] from his mother.").
[4] The Court of Civil Appeals stated that the evidence provided by Cleghorn "did not reveal a material change affecting the welfare of the child, focus on how a change in custody would materially benefit the child, or demonstrate an overwhelming and obvious need for a change in custody."993 So.2d at 465. In light, however, of the conflating of theMcLendon standard and the overwhelming-necessity standard, it is far from clear that the Court of Civil Appeals meant by this statement that, notwithstanding the fact that it was combining the standards, the Court of Civil Appeals had, in fact, applied them separately.
[5] The McLendon standard
 "`is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned."'
Ex parte McLendon, 455 So.2d at 865-66 (quotingWood v. Wood, 333 So.2d 826, 828
(Ala.Civ.App. 1976)).
[6] In his special writing in Smith v.Smith, 865 So.2d 1207, 1211 (Ala.Civ.App. 2003) (Murdock, J., concurring specially), Justice Murdock, then serving as a judge on the Court of Civil Appeals, discussed how the overwhelming-necessity standard began in the Court of Civil Appeals "merely as the appellate-review standard that must be met to overcome the `ore tenus presumption' in favor of a trial court's judgment where the evidence is presented orally." Justice Murdock further explained that in Braswell v.Braswell, 460 So.2d 1339 (Ala.Civ.App. 1984), the Court of Civil Appeals "for the first time incorrectly treated the overwhelming-necessity standard as a substantive legal standard, incorrectly characterized it as synonymous with theEx parte McLendon standard, and laid the foundation for its misuse in future cases as an extra-Ex parteMcLendon gloss on the Ex parte McLendon
standard." Smith, 865 So.2d at 1213 n. 1.
* Note from the reporter of decisions: On May 16, 2008, after remand from the Alabama Supreme Court, the Court of Civil Appeals affirmed, without opinion.