19 So.3d 886 (2009)
Ex parte David Wade RUSSELL.
(In re Angela Webster Russell v. David Wade Russell).
1070726.
Supreme Court of Alabama.
January 16, 2009.
Nancy M. Kirby, Prattville, for petitioner.
Submitted on petitioner's brief only.
COBB, Chief Justice.
This Court granted David Wade Russell's petition for a writ of certiorari to determine whether the Court of Civil Appeals properly reversed the judgment of the trial court awarding Russell primary custody of the parties' minor child. See Russell v. Russell, [Ms. 2050655, February 1, 2008] 19 So.3d 879 (Ala.Civ.App.2008).
The Court of Civil Appeals included in its opinion a detailed discussion of the facts of this case, which may be summarized as follows: David Wade Russell ("the father") and Angela Webster Russell ("the mother") were divorced in 1999. The divorce judgment awarded the parties joint legal custody of their minor son and awarded the mother primary physical custody, with the father receiving liberal visitation rights for periods during the summer, alternating weekends, and holidays. The father remained closely involved in his son's life, and he exercised his visitation rights fully. Although the parties attempted to reconcile on occasion, even residing together for a period of months, the reconciliation was not successful. For the most part, both parents cooperated in attempting to provide their son with a good home. Since the divorce, the father has worked in several different jobs but has supplied evidence that he has satisfied his child-support obligations. The mother testified *887 that the father had abused alcohol when they were married, but there was evidence from several sources that the mother had used drugs including marijuana, cocaine, and various opiate-related drugs and painkillers for periods since her teenage years and that the mother's drug use was more extensive and more frequent than the father's alcohol use. During 2001 the mother's drug use became more frequent, and the evidence supports the inference that she became dependent on opiate painkillers. When the parties attempted to reconcile in 2002, the father became aware of the extent of the mother's drug use and advised her to seek treatment.
In 2003 the mother did seek treatment; she subsequently underwent drug-rehabilitation treatment at Bradford Health Services in Warrior. Evidence generally, and particularly evidence concerning the mother's response to her treatment, supported the inference that the mother had an addictive personality and that it would be difficult for her to avoid a relapse into drug abuse. There was also evidence indicating that the mother was regularly taking prescribed antidepressant medication and that she had an extremely volatile temper. During the mother's drug-rehabilitation treatment, the parties agreed that the father would be the primary caretaker for their son. After the mother completed her "inpatient" treatment, she continued with "outpatient" treatment, and their son began living with the father, who now had primary physical custody. This living situation was maintained as the mother attempted to resume her nursing career, in part because the shift work required of her in her job made it difficult to meet her responsibilities as her son's primary caretaker. During this period the father enrolled their son in school at Tallassee because the father was employed there. The record also contains evidence indicating that the mother violated her treatment plan at least once by taking Darvocet, a painkiller, but by the time of the trial there was evidence indicating she had been free of drug use at her workplace.
In July 2004, the mother's nursing schedule changed so that she was no longer working in shifts, and she appeared at the father's residence demanding that physical custody of their son be returned to her. The father refused, and the ensuing argument resulted in the arrest of both parties on charges relating to the parties' loud outbursts during the argument. They were later acquitted of the charges. As a result of this dispute, the father filed the instant action seeking primary physical custody of the minor son.
After hearing all the evidence, the trial court entered an order, which states, in pertinent part:
"`1. That the parties have maintained a relationship[,] with the parties living together and apart on several occasions since their Final [divorce judgment] on November 29, 1999.
"`2. That during the period [between] the parties' Final [divorce judgment] and the filing of this Petition [for modification of custody], both the mother and the father have had periods when substance abuse has been involved, but one parent to a lesser extent than the other.
"`3. That during the period of time when the mother sought treatment, the father, David Wade Russell, maintained the child either in his home or in the home of the mother.
"`4. That since the period the parties' child has resided with the father, the child has done well in school and the mother has maintained a relationship with her child.
"`....

*888 "`6. That it is to the child's best interest and the benefits to the parties' child ... outweigh any detrimental effect for his primary residence to be changed from the mother, Angela Marie Russell, and placed with the father, David Wade Russell, subject to the reasonable visitation schedule as set out herein. The fact that the parties' child has resided with the father for a prolonged period is not considered in favor of or against any party.
"`7. That the mother, Angela Marie Russell[,] shall have each alternate weekend from Friday to Sunday, and every other week during the school summer vacation, with the provision that the child shall be with the father on the week immediately preceding school starting. Additionally, the mother shall have the seven days immediately preceding December 24 and including that day until 6:00 p.m. Additionally the mother shall have Mother's Day and the father shall have Father's Day.'"
Russell, 19 So.3d at 883-84.
The mother appealed, and the Court of Civil Appeals reversed the judgment of the trial court. In reaching its holding, the Court of Civil Appeals acknowledged the difficult burden that must be borne by the party seeking a change in custody between parents as set out by this Court in Ex parte McLendon, 455 So.2d 863 (Ala.1984):
"`[T]he McLendon test for a change of custody after custody is awarded in a divorce judgment is that the noncustodial parent seeking a change in custody must demonstrate (1) that he is fit to be the custodial parent; (2) that material changes that affect the child's welfare have occurred since the original award of custody; and (3) that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child.
"`Subsequent cases have made the burden of the noncustodial parent even heavier. ... Sexton v. Lambert, 611 So.2d 385 (Ala.Civ.App.1992), noted that the McLendon burden is "a very heavy burden." 611 So.2d at 387. Klapal v. Brannon, 610 So.2d 1167 (Ala.Civ.App.1992), also described the McLendon burden as a "heavy burden" and added that the evidence in support of a modification of custody "must be so substantial as to disclose an obvious and overwhelming necessity for a change." 610 So.2d at 1169. See also Whitfield v. Whitfield, 570 So.2d 700, 702 (Ala.Civ. App.1990); and Braswell v. Braswell, 460 So.2d 1339, 1341 (Ala.Civ.App. 1984).
"`....
"`... [T]his Court notes once again that the McLendon burden is "a very heavy burden." Sexton v. Lambert, 611 So.2d at 387. We also note that the evidence in support of a modification of custody must be substantial and must demonstrate an overwhelming necessity for a change, as required by Klapal v. Brannon, 610 So.2d at 1169.'
"Ex parte Martin, 961 So.2d 83, 87-88 (Ala.2006) (emphasis added)."
Russell v. Russell, 19 So.3d at 884-85.
The week after the Court of Civil Appeals issued its opinion reversing the judgment of the trial court in this case, this Court issued its opinion in Ex parte Cleghorn, 993 So.2d 462 (Ala.2008). In Cleghorn, this Court considered the validity of the trial court's modification of a previous award of custody of the parties' minor daughter so as to change primary custody to the father. The Court of Civil Appeals had reversed the trial court's judgment in *889 light of Ex parte Martin, 961 So.2d 83 (Ala.2006), and Ex parte Peppers, 703 So.2d 299, 302 (Ala.1997)(in which this Court reversed the judgment of the Court of Civil Appeals and upheld a change in primary custody as ordered by the trial court, but in doing so mentioned that such a change should be made only where evidence indicated an "overwhelming necessity for change"). In Cleghorn, the Court considered whether the requirement of an "overwhelming necessity" for change taken from Peppers and Martin had unduly expanded the already stringent McLendon standard for determining whether a change in primary custody was merited. We held:
"Our decision in Ex parte McLendon provides that a party seeking a change in custody must show that the change `will materially promote [the] child's welfare.' 455 So.2d at 865. The McLendon standard is a `rule of repose,' meant to minimize disruptive changes of custody because this Court presumes that stability is inherently more beneficial to a child than disruption. Ex parte McLendon, 455 So.2d at 865. It is founded on the longstanding principle that `[i]t is the court's duty to scrupulously guard and protect the interests of children. And in the context of child-custody proceedings, the dominant consideration is always the best interest of the child.' Ex parte Fann, 810 So.2d 631, 638 (Ala. 2001). See also McCartney v. McCartney, 11 So.3d 213, 220-221 (Ala.Civ.App. 2007) ("`The controlling consideration in child-custody matters is always the best interests of the child.'" (quoting Patrick v. Williams, 952 So.2d 1131, 1140 (Ala. Civ.App.2006))). The burden imposed by the McLendon standard is typically a heavy one, recognizing the importance of stability, but the overwhelming-necessity requirement places a nearly insurmountable burden on the party seeking a modification of custody, and in doing so, elevates stability above the best interests of the child.
"We reaffirm the McLendon standard as the standard to be applied when a party seeks a modification of custody, and we hold that the decision of the Court of Civil Appeals here conflicts with Ex parte McLendon. Moreover, insofar as they suggest that a party seeking a modification of a custody order must prove an overwhelming necessity for the change in custody, we hereby overrule Ex parte Martin and Ex parte Peppers."
993 So.2d at 468-69 (footnotes omitted).
Since our decision in Cleghorn, the Court of Civil Appeals has acknowledged that a noncustodial parent need not prove that there is an overwhelming necessity for the change in order to support a change in custody under McLendon. See J.B. v. Cleburne County Dep't of Human Res., 992 So.2d 34 (Ala.Civ.App.2008); Pitts v. Priest, 990 So.2d 917 (Ala.Civ.App. 2008). Accordingly, we reverse the judgment of the Court of Civil Appeals and remand the cause to that court for further proceedings consistent with Cleghorn and this opinion.
REVERSED AND REMANDED.[*]
SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs specially.
MURDOCK, Justice (concurring specially).
In its opinion in this case, the Court of Civil Appeals acknowledged the standard *890 adopted in Ex parte McLendon, 455 So.2d 863 (Ala.1984)  "`the positive good brought about by the change in custody [must] more than offset the disruptive effect of uprooting the child,'" 19 So.3d at 884but asserted that cases after McLendon have increased the burden of proof on noncustodial parents by stating that the McLendon standard is necessarily a "heavy" or "very heavy" burden requiring proof of an "overwhelming necessity for a change":
"`Subsequent cases have made the burden of the noncustodial parent even heavier. ... Sexton v. Lambert, 611 So.2d 385 (Ala.Civ.App.1992), noted that the McLendon burden is "a very heavy burden." 611 So.2d at 387. Klapal v. Brannon, 610 So.2d 1167 (Ala.Civ.App. 1992), also described the McLendon burden as a "heavy burden" and added that the evidence in support of a modification of custody "must be so substantial as to disclose an obvious and overwhelming necessity for a change." 610 So.2d at 1169. See also Whitfield v. Whitfield, 570 So.2d 700, 702 (Ala.Civ.App.1990); and Braswell v. Braswell, 460 So.2d 1339, 1341 (Ala.Civ.App.1984).'"
Russell v. Russell, 19 So.3d at 884 (quoting Ex parte Martin, 961 So.2d 83, 87 (Ala. 2006)) (emphasis omitted). The week after the Court of Civil Appeals issued its opinion in this case, however, this Court issued its opinion in Ex parte Cleghorn, 993 So.2d 462 (Ala.2008). Rejecting the notion that the law now imposes a heavier burden than the burden imposed by McLendon, this Court in Cleghorn specifically "reaffirm[ed] the McLendon standard as the standard to be applied when a party seeks a modification of custody." 993 So.2d at 469.
The Cleghorn Court did state that the burden of meeting the McLendon standard "typically is a heavy one." 993 So.2d at 468. This statement is consistent with the fact that, "typically," by the time there has been a material change in circumstances since the previous custody award (which must be shown to avoid the bar of the doctrine of res judicata), the child will have resided primarily with the custodial parent such a length of time and will have put down such "roots," to use McLendon's term, that removing the child from that primary custodial arrangement will in fact cause substantial disruption in the child's life. In such circumstances, proving that the positive good that will come from a change of custody will outweigh the disruptive effect of the change will be a heavy one.
On the other hand, where the disruptive effect of a change of custody will be less (perhaps because only a relatively short time has passed since the prior custody award, because the child was a teenager at the time of his parents' divorce and both parents have continued to live in the same community and have substantial involvement in the child's life, or for any other reason), the burden of proving that the benefit of a change of custody will "more than offset the disruptive effect of uprooting the child" will be less.
As this Court explained in Ex parte J.M.F., 730 So.2d 1190, 1194 (Ala.1998):
"It is ... well established that a noncustodial parent seeking a change of custody must show not only that he or she is fit to have custody, but that the change would materially promote the child's best interest. Ex parte McLendon, 455 So.2d 863 (Ala.1984). This requires a showing that the positive good brought about by the modification would more than offset the inherently disruptive effect caused by uprooting the child. McLendon."
(Emphasis added.) Consistent with this statement, the plurality opinion in DiIorio *891 v. Long, 839 So.2d 650, 655 (Ala.Civ.App. 2001), explained: "As McLendon indicates, whether ... the promotion of a child's welfare that will result from a custody modification will be material [is] ... measured against the disruption that will be caused by uprooting the child from the existing custodial arrangement."
In Blackmon v. Scott, 622 So.2d 393, 394 (Ala.Civ.App.1993) (quoted with approval in Carroll v. Carroll, 902 So.2d 696, 699 (Ala.Civ.App.2004)), we find a reference to the "material promotion" standard as one "requiring the [parent seeking to modify custody] to show that a change in custody would materially promote the welfare and best interests of the child, offsetting the disruptive effect of uprooting the child." See also R.K. v. R.J., 843 So.2d 774, 778 n. 4 (Ala.Civ.App.2002); Smith v. Smith, 865 So.2d 1207, 1211 (Ala.Civ.App.2003) (Murdock, J., concurring in the result); Gamble v. Segers, 833 So.2d 658, 662 (Ala.Civ.App. 2002) (referring to a parent's burden of demonstrating "how a change of custody will materially promote the best interests and welfare of the child so as to outweigh the disruption caused by such change of custody"); and Riley v. Riley, 882 So.2d 342, 345 (Ala.Civ.App.2002) (quoting Ex parte J.M.F.). See generally Spears v. Wheeler, 877 So.2d 607, 609 (Ala.Civ.App. 2003) (Murdock, J., dissenting), and cases cited therein.
As I wrote in my dissent in Marusich v. Bright, 947 So.2d 1068 (Ala.Civ.App.2006):
"I cannot agree with the suggestion ... that a parent seeking to modify a prior custody order always bears a heavy burden of proof. It is true that such a parent will always have the burden of proving a material change of circumstances, without which the prior custody order will have res judicata effect. See, e.g., Self v. Fugard, 518 So.2d 727 (Ala. Civ.App.1987) (explaining that a child-custody determination is final with respect to the particular set of circumstances currently before the court but is subject to modification upon a showing of a subsequent material change of circumstances); and Spears v. Wheeler, 877 So.2d 607, 609 n. 1 (Ala.Civ.App.2003) (Murdock, J., dissenting); cf. In re B.B., 944 So.2d 960, 962 (Ala.Civ.App.2006) (quoting S.P. v. E.T., 957 So.2d 1127, 1131-32 (Ala.Civ.App.2005), in the context of a dependency proceeding). See generally Ex parte J.P., 641 So.2d 276 (Ala. 1994). Once a material change of circumstances has been proven, however, the extent to which a child's interests must be promoted by a proposed change of custody (and thus the weight of the petitioning parent's ultimate burden) will depend on the degree of disruption that must be overcome before the court can conclude that the change will be in the child's best interests. See Smith v. Smith, 865 So.2d 1207, 1211-13 (Ala.Civ. App.2003) (Murdock, J., concurring in the result)."
947 So.2d at 1073 (Murdock, J., dissenting).
The most oft-repeated maxim in our child-custody cases is that our decisions must reflect the best interest of the child. "`The polestar,'" if you will, "`in custody matters ... is ... the best interest of the child.'" McConnell v. McConnell, 718 So.2d 78, 79 (Ala.Civ.App.1998) (quoting Smith v. Smith, 448 So.2d 381, 383 (Ala. Civ.App.1984)). By making sure that courts do not forget that, following an initial custody award, the court is no longer writing on a "blank slate" and must give due consideration to the disruption that could be caused in the event of a subsequent change of custody, the McLendon standard serves merely as device designed by the Court to facilitate the search for each child's best interest. We should eschew *892 any effort to interpret or add to the McLendon standard in a way that could cause it instead to serve as an impediment in that search.
NOTES
[*] Note from the reporter of decisions: On April 3, 2009, on remand from the Alabama Supreme Court, the Court of Civil Appeals affirmed, without opinion.