COBB, Chief Justice.
This Court granted David Wade Russell’s petition for a writ of certiorari to determine whether the Court of Civil Appeals properly reversed the judgment of the trial court awarding Russell primary custody of the parties’ minor child. See Russell v. Russell, 19 So.3d 879 (Ala.Civ.App.2008).
The Court of Civil Appeals included in its opinion a detailed discussion of the facts of this case, which may be summarized as follows: David Wade Russell (“the father”) and Angela Webster Russell (“the mother”) were divorced in 1999. The divorce judgment awarded the parties joint legal custody of their minor son and awarded the mother primary physical custody, with the father receiving liberal visitation rights for periods during the summer, alternating weekends, and holidays. The father remained closely involved in his son’s life, and he exercised his visitation rights fully. Athough the parties attempted to reconcile on occasion, even residing together for a period of months, the reconciliation was not successful. For the most part, both parents cooperated in attempting to provide their son with a good home. Since the divorce, the father has worked in several different jobs but has supplied evidence that he has satisfied his child-support obligations. The mother tes *887 tified that the father had abused alcohol when they were married, but there was evidence from several sources that the mother had used drugs including marijuana, cocaine, and various opiate-related drugs and painkillers for periods since her teenage years and that the mother’s drug use was more extensive and more frequent than the father’s alcohol use. During 2001 the mother’s drug use became more frequent, and the evidence supports the inference that she became dependent on opiate painkillers. When the parties attempted to reconcile in 2002, the father became aware of the extent of the mother’s drug use and advised her to seek treatment.
In 2003 the mother did seek treatment; she subsequently underwent drug-rehabilitation treatment at Bradford Health Services in Warrior. Evidence generally, and particularly evidence concerning the mother’s response to her treatment, supported the inference that the mother had an addictive personality and that it would be difficult for her to avoid a relapse into drug abuse. There was also evidence indicating that the mother was regularly taking prescribed antidepressant medication and that she had an extremely volatile temper. During the mother’s drug-rehabilitation treatment, the parties agreed that the father would be the primary caretaker for their son. After the mother completed her “inpatient” treatment, she continued with “outpatient” treatment, and their son began living with the father, who now had primary physical custody. This living situation was maintained as the mother attempted to resume her nursing career, in part because the shift work required of her in her job made it difficult to meet her responsibilities as her son’s primary caretaker. During this period the father enrolled their son in school at Tal-lassee because the father was employed there. The record also contains evidence indicating that the mother violated her treatment plan at least once by taking Darvocet, a painkiller, but by the time of the trial there was evidence indicating she had been free of drug use at her workplace.
In July 2004, the mother’s nursing schedule changed so that she was no longer working in shifts, and she appeared at the father’s residence demanding that physical custody of their son be returned to her. The father refused, and the ensuing argument resulted in the arrest of both parties on charges relating to the parties’ loud outbursts during the argument. They were later acquitted of the charges. As a result of this dispute, the father filed the instant action seeking primary physical custody of the minor son.
After hearing all the evidence, the trial court entered an order, which states, in pertinent part:
“ 1. That the parties have maintained a relationship[,] with the parties living together and apart on several occasions since their Final [divorce judgment] on November 29,1999.
“ ‘2. That during the period [between] the parties’ Final [divorce judgment] and the filing of this Petition [for modification of custody], both the mother and the father have had periods when substance abuse has been involved, but one parent to a lesser extent than the other.
“ ‘3. That during the period of time when the mother sought treatment, the father, David Wade Russell, maintained the child either in his home or in the home of the mother.
“ ‘4. That since the period the parties’ child has resided with the father, the child has done well in school and the mother has maintained a relationship with her child.
[[Image here]]
*888 “ ‘6. That it is to the child’s best interest and the benefits to the parties’ child ... outweigh any detrimental effect for his primary residence to be changed from the mother, Angela Marie Russell, and placed with the father, David Wade Russell, subject to the reasonable visitation schedule as set out herein. The fact that the parties’ child has resided with the father for a prolonged period is not considered in favor of or against any party.
“ ‘7. That the mother, Angela Marie Russell[,] shall have each alternate weekend from Friday to Sunday, and every other week during the school summer vacation, with the provision that the child shall be with the father on the week immediately preceding school starting. Additionally, the mother shall have the seven days immediately preceding December 24 and including that day until 6:00 p.m. Additionally the mother shall have Mother’s Day and the father shall have Father’s Day.’ ”
Russell, 19 So.3d at 883-84.
The mother appealed, and the Court of Civil Appeals reversed the judgment of the trial court. In reaching its holding, the Court of Civil Appeals acknowledged the difficult burden that must be borne by the party seeking a change in custody between parents as set out by this Court in Ex parte McLendon, 455 So.2d 863 (Ala.1984):
“ ‘[T]he McLendon test for a change of custody after custody is awarded in a divorce judgment is that the noncustodial parent seeking a change in custody must demonstrate (1) that he is fit to be the custodial parent; (2) that material changes that affect the child’s welfare have occurred since the original award of custody; and (3) that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child.
“ ‘Subsequent cases have made the burden of the noncustodial parent even heavier. ... Sexton v. Lambert, 611 So.2d 385 (Ala.Civ.App.1992), noted that the McLendon burden is “a very heavy burden.” 611 So.2d at 387. Klapal v. Brannon, 610 So.2d 1167 (Ala.Civ.App.1992), also described the McLendon burden as a “heavy burden” and added that the evidence in support of a modification of custody “must be so substantial as to disclose an obvious and overwhelming necessity for a change.” 610 So.2d at 1169. See also Whitfield v. Whitfield, 570 So.2d 700, 702 (Ala.Civ.App.1990); and Braswell v. Braswell, 460 So.2d 1339, 1341 (Ala.Civ.App.1984).
[[Image here]]
“ ‘... [T]his Court notes once again that the McLendon burden is “a very heavy burden.” Sexton v. Lambert, 611 So.2d at 387. We also note that the evidence in support of a modification of custody must be substantial and must demonstrate an overwhelming necessity for a change, as required by Klapal v. Brannon, 610 So.2d at 1169.’
“Ex parte Martin, 961 So.2d 83, 87-88 (Ala.2006) (emphasis added).”
Russell v. Russell, 19 So.3d at 884-85.
The week after the Court of Civil Appeals issued its opinion reversing the judgment of the trial court in this case, this Court issued its opinion in Ex parte Cleghorn, 993 So.2d 462 (Ala.2008). In Cleg-horn, this Court considered the validity of the trial court’s modification of a previous award of custody of the parties’ minor daughter so as to change primary custody to the father. The Court of Civil Appeals had reversed the trial court’s judgment in *889 light of Ex parte Martin, 961 So.2d 83 (Ala.2006), and Ex parte Peppers, 703 So.2d 299, 302 (Ala.1997)(in which this Court reversed the judgment of the Court of Civil Appeals and upheld a change in primary custody as ordered by the trial court, but in doing so mentioned that such a change should be made only where evidence indicated an “overwhelming necessity for change”). In Cleghom, the Court considered whether the requirement of an “overwhelming necessity” for change taken from Peppers and Martin had unduly expanded the already stringent McLendon standard for determining whether a change in primary custody was merited. We held:
“Our decision in Ex parte McLendon provides that a party seeking a change in custody must show that the change ‘will materially promote [the] child’s welfare.’ 455 So.2d at 865. The McLendon standard is a ‘rule of repose,’ meant to minimize disruptive changes of custody because this Court presumes that stability is inherently more beneficial to a child than disruption. Ex parte McLendon, 455 So.2d at 865. It is founded on the longstanding principle that ‘[i]t is the court’s duty to scrupulously guard and protect the interests of children. And in the context of child-custody proceedings, the dominant consideration is always the best interest of the child.’ Ex parte Fann, 810 So.2d 631, 638 (Ala.2001). See also McCartney v. McCartney, 11 So.3d 213, 220-21 (Ala.Civ.App.2007) (“ ‘The controlling consideration in child-custody matters is always the best interests of the child.’ ” (quoting Patrick v. Williams, 952 So.2d 1131, 1140 (Ala.Civ.App.2006))). The burden imposed by the McLendon standard is typically a heavy one, recognizing the importance of stability, but the overwhelming-necessity requirement places a nearly insurmountable burden on the party seeking a modification of custody, and in doing so, elevates stability above the best interests of the child.
“We reaffirm the McLendon standard as the standard to be applied when a party seeks a modification of custody, and we hold that the decision of the Court of Civil Appeals here conflicts with Ex parte McLendon. Moreover, insofar as they suggest that a party seeking a modification of a custody order must prove an overwhelming necessity for the change in custody, we hereby overrule Ex parte Martin and Ex parte Peppers.”
993 So.2d at 468-69 (footnotes omitted).
Since our decision in Cleghom, the Court of Civil Appeals has acknowledged that a noncustodial parent need not prove that there is an overwhelming necessity for the change in order to support a change in custody under McLendon. See J.B. v. Cleburne County Dep’t of Human Res., 992 So.2d 34 (Ala.Civ.App.2008); Pitts v. Priest, 990 So.2d 917 (Ala.Civ.App.2008). Accordingly, we reverse the judgment of the Court of Civil Appeals and remand the cause to that court for further proceedings consistent with Cleghom and this opinion.
REVERSED AND REMANDED. 
SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs specially.