THOMAS, Judge,
dissenting.
I respectfully dissent from the decision to remand this cause to the juvenile court. In my opinion, the record does not support the need for a remand, because it does not contain evidence from which the juvenile court could conclude that the children are dependent in the care of their custodian or custodians. I would, therefore, reverse the judgment of the juvenile court and remand the cause for entry of a judgment dismissing the dependency petitions.
S.C. (“the maternal grandmother”) filed dependency petitions regarding the children. In her petitions, she alleged that the children were dependent due to the conduct of their mother, C.G. However, the children’s dependency resulting from *664 the actions of their mother had been resolved by placing them in the custody of either S.L.M. or S.L.M. and R.S.M.[4] See S.P. v. E.T., 957 So.2d 1127, 1131 (Ala.Civ. App.2005) (indicating that “final disposi-tional orders coincide with the end of the child’s dependency, i.e., the child has a proper custodian ‘and’ is no longer ⅛ need of care or supervision’ by persons other than the custodian. See Ala.Code 1975, [former] § 12-15-l(10)n. In other words, under ideal circumstances, the final dispositional order results in a custody award wherein the parent or custodian is able and willing to have the care, custody, and control of the' child, free from any intervention or supervision by the state under the dependency statutes.”). Thus, it was incumbent on the maternal grandmother to prove at trial that the children were presently dependent in order to receive custody of the children; that is, the maternal grandmother was required to prove that the children were dependent in the custody of the custodians before the juvenile court could award her custody of the children. See T.B. v. T.H., 30 So.3d 429, 431 (Ala.Civ.App.2009) (stating that a juvenile court may make a disposition of a child in a dependency proceeding only after finding the child dependent); see also V.W. v. G.W., 990 So.2d 414, 417 (Ala.Civ.App.2008) (quoting K.B. v. Cleburne Cnty. Dep’t of Human Res., 897 So.2d 379, 389 (Ala.Civ.App.2004) (Murdock, J., concurring in the result)) (“ ‘[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.’ ”). Furthermore, a child cannot be dependent if he or she has a fit and willing parent or a fit and willing legal custodian (or custodians); in such a situation, the child is not dependent and custody remains with the parent or the legal custodian. J.W. v. T.D., 58 So.3d 782, 792 (Ala.Civ.App.2010). The maternal grandmother did not prove that the children were dependent in the care of the custodians; therefore, the only alternative available to the juvenile court was to dismiss her dependency petitions. See Ala. Code 1975, § 12 — 15—310(b).
MOORE, J., concurs.

On Return to Remand

DONALDSON, Judge.
On April 12, 2013, we remanded this action to the Etowah Juvenile Court (“the trial court”). We were unable to determine from the final order of the trial court the basis for its decision to change the custody of S.D.A. and R.D.A. (“the children”) to S.C. (“the maternal grandmother”). Based on the argument of the children’s custodians, S.L.M. and R.S.M., that the trial court had erred in finding the children to be dependant, we instructed that court, based on the existing record, to make the written findings required by Rule 25(A), Ala. R. Juv. P., as to whether the children were dependant as to S.L.M. and R.S.M., and, if so, to identify the grounds supporting the findings of dependency. S.L.M. v. S.C., 171 So.3d 656 (Ala. Civ.App.2013). A thorough statement of the facts is set out in this court’s opinion remanding the action to the trial court. Assuming that the proceedings had been conducted as a dependency action, we stated in our prior opinion that, “[i]f the trial court finds that [either] child was not de-pendant as to her custodian or custodians, the petition should be dismissed as to that child.” 171 So.3d at 663. The trial court, in compliance with our instructions, filed its return to remand to this court; on *665 remand, the trial court entered two identical orders, one relating to S.D.A. and one relating to R.D.A., which state, in part:
“[T]he Maternal Grandmother of the child[ ] did not raise the issue that the minor child was dependent at the hands of the Custodians of the minor child, to wit: [S.L.M. and S.R.M.], and no dependency of the minor child at the hands of the Custodians is found.
“2. The [maternal grandmother] filed a petition for custody of the minor child.... The [maternal grandmother] was not aware of the existence of the minor child until after custody was awarded to a non-relative. When the [maternal grandmother] found out about her granddaughter, she filed the Petition for Custody which this Court ruled on.
“3. The Court heard evidence at [a] hearing addressing the Petition for custody .... The [maternal grandmother] provided testimony that she is a fit and proper person to have the care, custody and control of the granddaughter. She also has custody of the minor child’s older half sibling.
“4. At the hearing the mother of the minor child testified that the present custodians let her have overnight visits with the minor child. The mother also testified that she was still using drugs and still had a problem with them. She also testified that she did not want [the maternal grandmother] to have custody of the minor child because she would hold her accountable for using drugs and restrict her visits with the minor child if the mother was using drugs, but the present custodian understood her drug use even though it would make her mad. The Court was greatly disturbed'by this, and concerned that the minor child was being exposed to the situation which removed her from her natural mother in the first place. It was clear and convincing evidence from the testimony of all the parties, that the [maternal grandmother] limits the contact between the mother and the older half-sibling but that the present custodians of the minor child [do] not.
[[Image here]]
“5. After the hearing the testimony of all the parties, the Court entered an Order granting custody to the [maternal grandmother]. The custody Order was not based on the dependency of the minor child, even though the child does not have a parent who is willing to discharge her responsibilities to and for the child, with the natural mother of the child being addicted to Drugs.
“Based on the evidence, the Court finds that there has been a material change in circumstances in this case and that the positive good brought about by the modification would more than offset the inherently disruptive effect caused by uprooting the child. The child is young and the court finds that the young child will adapt to the circumstances. She would be living with a loving grandmother, with her other siblings.
“The Court finds that the positive good brought about by the change of custody would offset any disruption that might be caused. By granting custody of the child to the petitioner/grandmother, all of the children would be together, and be protected from their mother who admitted to still using drugs.
“This Court feels that the [Ex parte] McLendon [, 455 So.2d 863 (Ala.1984),] standard has been met and the custody change is correct.”
The trial court has clarified that the proceedings on the maternal grandmother’s petitions were not conducted as dependency actions. Thus, the first issue raised by S.L.M. and R.S.M. on appeal, alleging *666 error in finding the children dependent is rendered moot.
The trial court’s orders on remand clarified that custody of the children was changed from S.L.M. and R.S.M. to the maternal grandmother after applying the standard announced in Ex parte McLendon, 455 So.2d 863 (Ala.1984). Thus, this court must address the two remaining issues S.L.M. and R.S.M. present on appeal. S.L.M. and R.S.M. have argued that the maternal grandmother failed to present sufficient evidence to meet the McLendon standard and that the trial court was without jurisdiction to modify prior orders placing the children in the custody of S.L.M. and R.S.M. S.L.M. and R.S.M. argue that the maternal grandmother failed to present sufficient evidence to meet the McLendon standard to warrant a change of custody. S.L.M. and R.S.M. argue that the May 2011 order and the November 2011 order pertaining to S.D.A. and R.D.A., respectively, were final orders, as opposed to pendente lite orders, and therefore that the maternal grandmother’s petitions to modify these custody orders should be subject to the McLendon standard. In support of this contention, S.L.M. and R.S.M. cite this court’s holding in P.A. v. L.S., 78 So.3d 979 (Ala.Civ.App. 2011). The maternal grandmother argues that the May 2011 and November 2011 orders were pendente lite orders and that the “best interests” standard should therefore apply to her petitions. The May 2011 order as to S.D.A. was entered as a “temporary” custody order, and the November 2011 order as to R.D.A. simply awards custody to S.L.M. and R.S.M., without designating whether the award was a penden-te lite award and without setting any future hearings. On that basis, both orders are considered “final” for purposes of determining the proper custody-modification standard to apply. See P.A., 78 So.3d at 981 (“In a case involving the modification of a temporary custody order, our supreme court has held that the parties seeking to modify that order are required to meet the McLendon standard.”). This court has recently revisited the issue of the proper standard to apply for modification of custody in a case in which the child has previously been found to be dependent and the modification is sought by a nonparent family member. In B.C. v. A A, 143 So.3d 198 (Ala.Civ.App.2013), this court held:
“The noncustodial relatives appeal the judgments insofar as they denied their petitions seeking custody of the children and terminated the award of specified visitation to them. The noncustodial relatives filed petitions seeking custody of the children, in which they asserted that the children’s best interests would be better served if custody were modified. Once a juvenile court has placed a dependent child into the ‘permanent’ custody of a proper caregiver, the dependency of the child ends and any further change of custody is governed by the standards set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). See Ex parte J.P., 641 So.2d 276, 278 (Ala.1994) (applying the McLendon standard in a custody dispute between two sets of relatives when one set of relatives had been awarded custody under a prior judicial order). Thus, the noncustodial relatives were required to meet the McLendon standard in order to be entitled to a modification of the custody of the children. As our supreme court reaffirmed in Ex parte Cleghorn, 993 So.2d 462, 466-67 (Ala.2008):
“ ‘In Ex parte McLendon, we held that the trial court cannot order a change of custody “ ‘unless [the party seeking the change of custody] can show that a change of the custody will materially promote [the] child’s welfare.’ ” 455 So.2d at 865 (quoting Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947)). We noted in *667 Ex parte McLendon that “[i]t is important that [the party seeking the change in custody] show that the child’s interests are promoted by the change, i.e., that [the party seeking the change in custody] produce evidence to overcome the ‘inherently disruptive effect caused by uprooting the child.’ ” 455 So.2d at 866.’
“Our supreme court has also stressed that ‘[t]he McLendon standard is a “rule of repose,” meant to minimize disruptive changes of custody because this Court presumes that stability is inherently more beneficial to a child than disruption.’ Ex parte Cleghorn, 993 So.2d at 468. As noted above, the record contains evidence indicating that the children make good grades and are doing well in the custody of the custodians. Nothing in the record would support the conclusion that the children’s best interest would be served by modifying custody and removing the children from the home of the custodians. Accordingly, we affirm the juvenile court’s judgments insofar as they denied the noncustodial relatives’ custody petitions.”
143 So.3d at 205-06. As in B.C., the matter before us presents a situation in which a “noncustodial relative[] filed petitions seeking custody of the children, in which [she] asserted that the children’s best interests would be better served if custody were modified.” 143 So.3d at 205. Again, as in B.C., the “juvenile court ha[d] placed a dependent child into the ‘permanent’ custody of a proper caregiver,” and there being no new finding of dependency, “any further change of custody is governed by the standards set forth in Ex parte McLendon.” 143 So.3d at 205. The question then before us is whether the maternal grandmother, as the petitioning noncustodial relative, met the McLendon standard. The trial court specifically found:
“Based on the evidence, the Court finds that there has been a material change in circumstances in this case and that the positive good brought about by the modification would more than offset the inherently-disruptive effect caused by uprooting the child. The child is young and the court finds that the young child will adapt to the circumstances. She would be living with a loving grandmother, with her other siblings.
“The Court finds that the positive good brought about by the change of custody would offset any disruption that might be caused. By granting custody of the child to the petitioner/grandmother, all of the children would be together, and be protected from their mother who admitted to still using drugs.
“This Court feels that the McLendon standard has been met and the custody change is correct.”
Evidence was presented to the trial court ore tenus. The trial court personally observed the parties and was in the best position to observe their demeanor and to judge their credibility. The responsibility of making difficult decisions regarding child custody rests squarely on the shoulders of the trial judge, “who has actually seen and heard the parties and the witnesses [and] is infinitely more qualified to make a decision than an appellate court.” Ex parte D.W.W., 717 So.2d 793, 796-97 (Ala.1998).
Applying the ore tenus standard of review, the trial court’s decision to modify custody did not amount to reversible error. See Ex parte Fann, 810 So.2d 631, 633 (Ala.2001) (“ ‘ “ ‘A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on' appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly *668 and palpably wrong.(quoting Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting in turn other cases)). In its order on remand, the trial court articulated the reasons for the difficult decision it made:
“At the hearing the mother of the minor child testified that the present custodians let her have overnight visits with the minor child. The mother also testified that she was still using drugs and still had a problem with them. She also testified that she did not want [the maternal grandmother] to have custody of the minor child because she would hold her accountable for using drugs and restrict her visits with the minor child if the mother was using drugs, but the present custodian understood her drug use even though it would make her mad. The Court was greatly disturbed by this, and concerned that the minor child was being exposed to the situation which removed her from her natural mother in the first place. It was clear and convincing evidence from the testimony of all the parties, that the [maternal grandmother] limits the contact between the mother and the older half-sibling but that the present custodians of the minor child [do] not.”
The trial court modified custody, removing the children from the custody of two people who have no blood relation to the children and with whom they had been living for less than two years, and placing them in the custody of their maternal grandmother, who already has custody of the children’s biological half sister as a result of a prior dependency action. Although a different decision could have been reached under these facts, the decision is supported by the record and cannot be disturbed on appeal.
S.L.M. and R.S.M. argue that the sufficiency of the prior custody orders was not properly before the trial court and that, therefore, the trial court was without authority to modify the prior orders. Specifically, S.L.M. and R.S.M. argue that the maternal grandmother could properly attack the prior custody orders of the trial court only by filing a motion under Rule 60(b), Ala. R. Civ. P., and that, because the maternal grandmother was not a party to the actions at the time the initial custody orders were entered, she lacked standing to bring such a motion. However, this argument is misplaced. Unlike an ordinary civil matter, pursuant to § 12-15-117(c), Ala.Code 1975, a juvenile court retains jurisdiction of a dependency case beyond a final judgment:
“In any case over which the juvenile court has jurisdiction, the juvenile court shall retain jurisdiction over an individual of any age to enforce or modify any prior orders of the juvenile court unless otherwise provided by law and also shall retain jurisdiction for the enforcement or modification of any prior orders of the juvenile court requiring the payment ■of fines, court costs, restitution, or other money ordered by the juvenile court until paid in full.”
In similar circumstances, this court has viewed postdisposition motions from non-parental family members as motions for a change of custody:
“The noncustodial relatives filed petitions seeking custody of the children, in which they asserted that the children’s best interests would be better served if custody were modified. Once a juvenile court has placed a dependent child into the ‘permanent’ custody of a proper caregiver, the dependency of the child ends and any further change of custody is governed by the standards set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984).... Thus, the noncustodial relatives were required to meet the McLen-don standard in order to be entitled to a *669 modification of the custody of the children.”
B.C., 143 So.3d at 205; Ex parte J.P., 641 So.2d 276, 279 (Ala.1994) (“Therefore, the maternal aunt and uncle’s petition for custody filed almost two years later was a petition for modification of custody; it was governed by the McLendon rule.”).
Based on the trial court’s continuing jurisdiction over these matters, the maternal grandmother moved to intervene pursuant to Rule 24(a)(2), Ala. R. Civ. P., and there is no indication in the record that S.L.M. and R.S.M. objected to that motion to intervene. Further, as was the situation in B.C., the maternal grandmother, as a “noncustodial relative[,] filed a petition to intervene and a complaint in intervention in each action, seeking custody of the children.... The juvenile court permitted the noncustodial relativef] to intervene; it also consolidated the actions for trial.” B.C., 143 So.3d at 200.
Because S.L.M. and R.S.M. fail to demonstrate that the trial court lacked jurisdiction over the petitions filed by the maternal grandmother . or that it erred in applying the McLendon standard and awarding custody to the maternal grandmother, we affirm the judgments of the trial court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, J., concur.
THOMAS, J., dissents, with writing.
MOORE, J., dissents, without writing.

. For simplicity, although S.L.M. is the sole custodian of S.D.A. and S.L.M. and R.S.M. are joint custodians of R.D.A., I will refer to them as the custodians of both children for purposes of this dissent.